## MONTGOMERY v. LADJING.

(Supreme Court, Appellate Term. December 28, 1899.)

1. BAILMENT—RESTAURANTS.

A customer at a restaurant hung his overcoat on a hook in a post near his table, without calling attention of the proprietor or employés to it, and shortly after it was missing. The customer could not say that his waiter saw the overcoat. *Held* not to show a bailment, making the restaurant keeper liable for the loss.

2. SAME—NEGLIGENCE.

Defendant had kept a restaurant for 15 years, personally supervising it, and allowing no suspicious characters to enter. There was a place behind the cashier's desk for the care of property of customers that might be turned over for safe-keeping. Plaintiff had visited the place for six months, but did not place his overcoat in the proprietor's custody, though he admitted he might have seen another guest place his sample case there. *Held* not to show want of ordinary care by the proprietor, entitling plaintiff to recover for the loss of his overcoat.

Appeal from municipal court, borough of Manhattan, Third district.

Action by Marcus W. Montgomery against John Ladjing. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Jas. Edw. Graybill, for appellant.

Alger & Simpson, for respondent.

FREEDMAN, P. J. This action was brought by the plaintiff to recover the value of an overcoat lost in a restaurant kept by defendant, while the plaintiff was upon the premises as a customer. At the trial the plaintiff had judgment, and the defendant appealed. The defendant was not shown to be an innkeeper, but merely a restaurant keeper. As such, he cannot be subjected to

the liabilities of an innkeeper. Story, Bailm. 475. In Carpenter v. Taylor, 1 Hilt. 193, it was held that a person who enters a restaurant to procure a meal or refreshments is not to be deemed a guest or traveler, entitled to the protection which the law gives against innkeepers. In Buttman v. Dennett, 9 Misc. Rep. 462, 30 N. Y. Supp. 247, it was held that a restaurant keeper in whose custody wraps and other articles of wearing apparel have been temporarily placed for safe-keeping is liable as a bailee. This liability has been enforced where a waiter took the hat and coat of a customer when he entered the restaurant and seated himself at a table. Appleton v. Welch, 20 Misc. Rep. 343, 45 N. Y. Supp. 751. But in Simpson v. Rourke, 13 Misc. Rep. 230, 34 N. Y. Supp. 11, it was held that a restaurant keeper is not an insurer of the effects of customers who may have accepted the invitation held out by him, but, at most, is required to use only the ordinary care called for by the circumstances. In that case the plaintiff had not placed his overcoat in the physical custody of the defendant or his servant, but had it removed after having selected a seat, and personally placed it on a rack, and it was therefore held that the question merely was as to the sufficiency of the general supervision exercised over the restaurant for the protection of customers' property placed therein, and, it not appearing that the size of the restaurant or any special conditions called for greater vigilance than was actually exercised, the judgment in favor of the defendant was affirmed. It is not necessary to multiply citations. The cases already cited sufficiently show the principles upon which the liability of a restaurant keeper for the loss of personal property of a customer depends. As to the other cases directly affecting restaurant keepers which may be found in the books, it will, on examination, be found that each of them depends upon an application of one or the other of the principles already stated to the peculiar facts of the case.

Analogous cases, in which the defendants had other occupations, may throw some additional light on the question under what circumstances a restaurant keeper is or is not held liable, but none of them is opposed to what has already been said. Bird v. Everard, 4 Misc. Rep. 104, 23 N. Y. Supp. 1008, in which case the defendant was the proprietor of a Russian and Turkish bathing establishment, was decided upon the theory that from the evidence, and especially from the very nature of the accommodations afforded by defendant's establishment, it seemed clear that while plaintiff was absent from the room assigned to him for the purpose of disrobing, and in the bath in another part of the establishment, his apparel left in the room assigned to him was in defendant's keeping; that the assignment of the room for the purpose of disrobing was, in effect, a representation by the defendant that he would assume the custody of plaintiff's apparel at that place; that having received the sum demanded of plaintiff for the privilege of the bath, and assumed the custody of plaintiff's apparel while the latter was enjoying the privilege, defendant became a voluntary custodian of plaintiff's apparel for profit, and was bound to exercise due care to guard it against loss or theft by others having access to defend-

ant's establishment with his permission; that the conclusion was irresistible that the loss or theft of plaintiff's overcoat could have been prevented if defendant had, in view of the indiscriminate admission of persons to his establishment, employed one or more competent persons to guard against such occurrences; that his omission to do so was want of ordinary care, and his want of ordinary care was negligence. On the other hand, it was held in Schneps v. Strum, 25 Misc. Rep. 168, 54 N. Y. Supp. 140, that the proprietor of a five-cent bathing house, having a bathing tank used in common by all customers, and under the general supervision of a manager, who patrolled the place, was not liable to a regular weekly bather, who placed his clothes, as usual, upon a bench in the bathing room, for the loss of jewelry and money which he left in his clothes while he was taking a bath; that, under the circumstances, the proprietor had fully performed such duties towards his customers as he had undertaken to perform; and that, moreover, the failure of the bather to deposit his valuables with the proprietor, as he might have done and had done before, constituted contributory negligence on his part. So, in Pattison v. Hammerstein, 17 Misc. Rep. 375, 39 N. Y. Supp. 1039, a judgment against the defendant was reversed on the ground that the manager of a theater, in the absence of a special agreement, is not an insurer of the property of a patron, though it consists of apparel which is usually laid aside by him while attending the play, and is not responsible for a theft thereof while it is hanging on a hook in the box occupied by the patron, unless such patron clearly establishes that the defendant or his servants have been guilty of negligence or a wrongful act. In Bunnell v. Stern, 122 N. Y. 539, 25 N. E. 910, 10 L. R. A. 481, which is a leading case, the material facts were substantially as follows: The defendants were the proprietors of a retail store in which there was a department for the sale of ready-made cloaks, which was provided with mirrors for the use of customers who might desire to try the cloaks on. Plaintiff desired to buy a cloak, and to try it on, and for that purpose necessarily took off her cloak. There being no other place to put it, she laid it on a counter directly in front of a clerk, and near a mirror in front of which the clerk or saleswoman who was waiting upon her stood with one of the defendants' cloaks to have her try it on, which she did. She did not ask and was not told where to put her cloak. The clerk or saleswoman who was waiting upon her and another at the counter observed her as she laid it down, but neither said anything. After trying on defendants' cloak, plaintiff went to get her own, but it could not be found. The clerk or saleswoman who waited upon the plaintiff testified that customers, under such circumstances, placed their cloaks on chairs and where it was most convenient for them, and that she paid no attention to garments removed in order to try on others. And it further appeared that no notice had been given to plaintiff, either directly or indirectly, as to where she should put her cloak, and that no instructions had been given by the defendants to their clerks as to the disposition of garments removed by customers in order to try on those offered for sale. Upon these

facts, it was held that the defendants, as voluntary custodians for profit to themselves, were bound to use some care for plaintiff's property, which she had necessarily laid aside by defendants' implied invitation; that the evidence showed an omission to exercise this care; and that, therefore, they were properly held liable by the trial court. From the report of the case of McAllister v. Simon, 27 Misc. Rep. 214, 57 N. Y. Supp. 733, it appears, however, that this doctrine of constructive custody by a storekeeper of garments temporarily and necessarily laid aside will not be extended beyond the time necessary to enable a customer to be fitted or to complete the purchase. In that case a customer, without the request of or notice to the storekeeper, had placed her jacket over her purse on a table in a fitting room, and had then voluntarily left the room, until notified by the forewoman to re-enter for the purpose of being fitted, and in the meantime her purse was stolen. Upon these facts, it was held that the customer's negligence precluded a recovery.

The rule to be deduced from all these cases therefore is that, before a restaurant keeper will be held liable for the loss of an overcoat of a customer while such customer takes a meal or refreshments, it must appear either that the overcoat was placed in the physical custody of the keeper of the restaurant or his servants, in which case there is an actual bailment, or that the overcoat was necessarily laid aside under circumstances showing, at least, notice of the fact and of such necessity to the keeper of the restaurant or his servants, in which case there is an implied bailment or constructive custody, or that the loss occurred by reason of the insufficiency of the general supervision exercised by the keeper of the restaurant for the protection of the property of customers temporarily laid aside. After all, each case must largely depend upon its particular facts and circumstances; for it is well known that there are all kinds of restaurants. In some of them good taste and etiquette require that a customer should take his hat and overcoat off while taking a meal, while in others, especially the so-called "quick-lunch" establishments, customers frequently remove neither hat nor overcoat. In the case at bar the testimony on the part of the plaintiff is to the effect that, on the day of the loss, the plaintiff entered the restaurant kept by the defendant with a party of friends, and removed his overcoat, which was a light spring overcoat; that he hung it on a hook fixed to a post near the table at which he seated himself; that the attention of neither the defendant nor of any of his employés was called to the coat in any way; and that some 15 minutes later the coat was missing. The plaintiff testified that he would not say that the waiter who waited on him ever saw the overcoat. It was not shown how the loss occurred. These facts do not establish an actual bailment; for, as stated in Schouler, Bailm. §§ 1, 3, 9, 21, a bailment implies the delivery of a chattel, and, to subject one to liability as a bailee, it is a constituent element that he had voluntarily assumed or retained the custody of the chattel alleged to have been bailed. There was not even an implied bailment or constructive custody on the theory that the overcoat was

necessarily removed under circumstances which gave notice of such fact and of the necessity to the defendant or his servants. The plaintiff seems to have been conscious of the necessity of proving that the defendant had assumed the custody of the overcoat, for in his bill of particulars he alleges his cause of action to be "failure of defendant to exercise proper and lawful care of said coat while the same was in his care and custody," but he utterly failed to show such assumption of custody.

Neither actual nor implied bailment or constructive custody having been established, it remains to be seen whether the plaintiff sufficiently proved negligence on the part of the defendant in the general supervision exercised over the restaurant, such as it was, for the protection of customers' property in general. The burden of proof upon this point was upon the plaintiff; for it is only in the case of a bailment that the burden is cast upon a bailee to account for the loss of the goods. But the plaintiff rested his case, upon this point, upon the bare fact of the loss. The defendant, on the other hand, testified, and it was not disputed, that he had kept a restaurant for the past 15 years; that this was the first loss that had ever occurred in his establishment; that the plaintiff had visited the place for about six months prior to the date of the loss; that he (the defendant) gave his personal attention and supervision to the restaurant, and allowed no suspicious characters to enter; and that there was a place immediately behind the cashier's desk reserved for the care of the property of customers that might be given to him or to his employés for safe-keeping. The plaintiff admitted that in this place he "may have seen one of the other fellows leave a sample case." Upon the whole case, it did not appear that the size of the restaurant, or any special conditions therein, called for greater vigilance than was actually exercised, and the plaintiff wholly failed to show failure on the part of the defendant to exercise ordinary care in the general management of his establishment. In every aspect of the case, therefore, the defendant is entitled to a reversal of the judgment against him.

Judgment reversed, new trial ordered, with costs to the appellant to abide the event. All concur.