WENTWORTH v RIGGS.

(Supreme Court, Appellate Term, First Department. February 11, 1913.)

INNKEEPERS (§ 11*)—RESTAURANTS—WRAPS OF GUESTS—DELIVERY TO BAILEE —"ACTUAL DELIVERY"—LIABILITY FOR LOSS.

Plaintiff entered defendant's restaurant, which consisted of a large room, along the walls of which, between the tables, were hooks for hanging wraps, as well as around columns in the room. Plaintiff removed his overcoat, hung it on a hook about two feet from the table at which he had seated himself, and while he was eating his meal the coat was removed. *Held*, that the coat laid off by plaintiff at defendant's invitation was actually delivered to the temporary custody and exclusive possession of defendant, and that defendant was therefore liable to plaintiff for its loss.

[Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 17–40; Dec. Dig. § 11.*

For other definitions, see Words and Phrases, vol. 1, p. 156.]

Seabury, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Municipal Court, Borough of Manhattan, Ninth District.

Action by Reginald De M. Wentworth against Leon C. Riggs. From a Municipal Court judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued October term, 1912, before SEABURY, GUY, and BIJUR, JJ.

C. V. Oden Hughes, of New York City (Hugo Wintner, of New York City, of counsel), for appellant.

Claudius A. Hand, of New York City (Frank P. Woglom, of New York City, of counsel), for respondent.

BIJUR, J. Plaintiff sues to recover the value of an overcoat, which disappeared after he had hung it upon a hook about two feet from the table at which he had seated himself in defendant's restaurant. The restaurant is situated at No. 43 West Thirty-Third street, in the heart of a high-class retail shopping district, and the room in which plaintiff was seated is a large, open one, accommodating from 300 to 400 people.

"Along the walls between the tables are hooks on which you hang your coats. I think there were four columns in the center of the room, located around; and around those columns are rows of hooks upon which you hang your coats. * * * I hung mine on a hook which was immediately behind the table at which I sat—within two feet of it."

There was no place for checking coats or other personal property, but the cashier was accustomed to allow persons to place satchels and similar articles "behind the counter, * * * inside of a gate," in "a large place, about half as large as that jury box"; but no notice to this effect was given to patrons, and the plaintiff was not aware of such practice. According to defendant, it is a rule that waiters are not allowed to take into their possession the coats or belongings of guests. The bills of fare, as well as a very few placards on the walls, carried the inscription:

"Not responsible for hats, overcoats, umbrellas, etc."

Plaintiff had not noticed this inscription until after his attention was called to it at the time of the loss of his coat.

It seems to be undisputed that in this restaurant, as distinguished from the one involved in Harris v. Childs (Sup.) 84 N. Y. Supp. 260, plaintiff was impliedly invited to remove his outer clothing. The difficulty, after conceding the invitation to remove the garments, seems to consist in determining whether they remained thereafter in the custody of the owner or were committed to the care of the proprietor—in short, whether there was a bailment.

I am not prepared to say that any clear rule of universal application can be found in the cases. See Buttman v. Dennett, 9 Misc. Rep. 462, 30 N. Y. Supp. 247; Simpson v. Rourke, 13 Misc. Rep. 230, 34 N. Y. Supp. 11; Duckworth v. Codington (Sup.) 136 N. Y. Supp. 68; Bird v. Everard, 4 Misc. Rep. 104, 23 N. Y. Supp. 1008; Montgomery v. Ladjing, 30 Misc. Rep. 92, 61 N. Y. Supp. 840.

In Bunnell v. Stern, 122 N. Y. 539, 543, 25 N. E. 910, 10 L. R. A. 481, 19 Am. St. Rep. 519, the proprietors of a large retail store were held liable as "voluntary custodians for profit to themselves," where a customer, invited to try on wraps, had laid off her coat.

"It was necessary for her to lay it down somewhere. No place was provided for that purpose; there was no chair, even, in sight. She put it in the only place that was available, unless she threw it on the floor, and, as she did so, in contemplation of law, the defendants stood looking at her."

The last clause evidently refers to the fact that the clerk, who waited upon her, as well as a clerk behind the counter, saw her lay it down.

In Wamser v. Browning, King & Co., 187 N. Y. 87, 79 N. E. 861, 10 L. R. A. (N. S.) 314, the plaintiff, desiring to purchase a vest, was told by a clerk, then otherwise engaged, that the vests were piled up on a table some distance away, *and that he could go over and help himself*. His own coat and vest, while he was trying on a new one—but not in the presence of, or even near, any clerk of the establishment—was lost; and the conclusion of the court is:

"We, therefore, are of the opinion that the loss occurred through the negligence of the plaintiff."

The absence of the clerk and of his invitation to lay off plaintiff's clothing was commented on. See, also, Powers v. O'Neill, 89 Hun, 129, 34 N. Y. Supp. 1007.

In Pattison v. Hammerstein, 17 Misc. Rep. 375, 39 N. Y. Supp. 1039, it was held that occupants of a box in a theater, who hung their outer clothing upon hooks affixed to the wall of the box, did not commit them to the custody of the proprietor; and, no "evidence of negligence being apparent from some act of commission or omission" on the part of the proprietor, it was decided that he had not been shown to be liable. The box, in which the clothing was hung, was screened off from the rest of the house, and plaintiff permitted persons, not of his party, to enter the box freely, without any objection on his part.

It is significant that, in the case last cited, the clothing was hung in an inclosure exclusively engaged by the plaintiffs and separated from the balance of the house; whereas, in the case at bar, plaintiff's coat was hung upon the wall of a large, open room, filled with the employés of the defendant, to every one of whom it was in full view. Under these circumstances, it seems to me to be the natural, if not the only, conclusion that the coat laid off by plaintiff, at the defendant's invitation, was as much "actually delivered" (as defined by Mr. Justice SEABURY, in his opinion) to the temporary custody and exclusive possession of the defendant as if it had been hung in a coat room provided by the defendant, and that, had there been any reason for such action, defendant might have rightly prevented the plaintiff from resuming possession of the coat until defendant or its agents had been satisfied of plaintiff's title thereto by some appropriate means. Surely this is a far more rational inference to be drawn from the circumstances than to argue that the coat, hung on a hook two feet from the

plaintiff and behind him, was in his personal care and custody while he was engaged in eating the meal provided by the defendant.

I think, also, that upon the evidence adduced by the defendant himself, regardless of the question of bailment, there was an absence of due and adequate care and supervision over the property of his guests, under circumstances in which he became necessarily obliged to exercise the same; but I prefer to rest my decision upon the ground of actual bailment.

The judgment should be affirmed.

GUY, J. I concur, on the ground that the evidence establishes a constructive delivery to defendant.

SEABURY, J. (dissenting). I am unable to agree with the views expressed in the prevailing opinion. In view of the precautions taken by the defendant to police and care for the property of his patrons, I think it is evident that he cannot be held liable for the loss of the overcoat upon any theory of negligence, unless there was a bailment. If the defendant is to be held liable at all, it can only be upon this latter theory.

Confusion has been engendered by certain cases, which seem to discuss constructve bailment as if it were identical with constructive delivery. The two things are distinct. Formerly delivery was regarded as the essence of a bailment. As this branch of the law has developed, cases of constructive bailment have been recognized, covering cases where there had been no delivery, either actual or constructive, as where one held the possession of a chattel under such circumstances that the law placed upon the person having the possession of the chattel the obligation to deliver it to another. The typical instance of such a constructive bailment is where one sells a chattel to another, who pays the price thereof, and the vendor refuses to deliver it to the vendee. Here the law implies the contract of bailment, and holds the vendor answerable as bailee. In such a case it is apparent that there has been no delivery by the bailor to the bailee, and yet the bailment exists constructively. All the other examples of constructive bailment which are given in the books, as in the case of a finder, of a captor or salvor, of an attaching officer, are cases where the person having the *possession* of the chattel is held to be a bailee, although there has never been either an actual or a constructive delivery of the chattels to the bailee by the bailor. In other words, the essential fact of legal significance in all these cases is possession. It certainly is not delivery; for, in none of these cases of constructive bailment, is there either an actual or a constructive delivery.

The older definitions of the term "bailment" seem to accentuate merely the necessity for a delivery. Chief Justice Holt, in his celebrated opinion in Coggs v. Bernard, 2 Ld. Raym. 909, 1 Smith Lead. Cas. 354, which is supposed to have laid the foundations of the English law of bailment, divides bailment into six different sorts or classes and defines each. Delivery is in every case the essential element in Lord Holt's definition. So, also, Sir William Jones, Blackstone, Mr.

Justice. Story, and Chancellor Kent all give definitions of the term "bailment" which state that there must be a delivery. Jones on Bailment, 1, 117; 2 Black. Comm. 451; 2 Kent's Comm. lect. 40, p. 558. (4th Ed.); Story on Bailment, p. 5. Mr. Schouler, in his American notes to Coggs v. Bernard, in the ninth American Edition of Smith's Leading Cases (volume 1, p. 400), quotes the following definition of the term "bailment" from Bouvier's Dictionary:

"A delivery of some chattel by one party to another, to be held according to the special purpose of the delivery, and to be returned or delivered over when that special purpose is accomplished."

After commenting upon the conciseness of this definition, and admitting that it conforms fairly to the term "bailment" itself, Mr. Schouler says:

"But this writer finds such a scope too narrow to meet a number of instances which are properly referred to in this branch of the law, as where there is no strict delivery, as in the case of a finder, of a captor or salvor, of an attaching officer, of a person selling goods and retaining possession for the new owner, and the like; *for, while bailment imports literally delivery, the rights and duties fasten rather upon a possession acquired by the person in question than upon any contract or delivery.* Hence we may essay this new definition of our own, that *bailment consists in the holding of a chattel by some party under an obligation to return or deliver it over after some special purpose is accomplished.*"

This definition includes within its scope constructive bailments; whereas the earlier definitions of Holt, Jones, Blackstone, Story, and Kent in terms cover only cases of actual bailment.

I. In an actual bailment there must be a delivery of the chattels to the bailee or his agent. The delivery may be either actual or constructive.

(a) An actual delivery consists in giving to the bailee or his agents the real possession of the chattel. Shindler v. Houston, 1 Denio, 48.

(b) A constructive delivery comprehends all of those acts which, although not truly comprising real possession of the goods transferred, have been held constructione juris equivalent to acts of real delivery, and in this sense includes symbolical or substituted delivery. Shindler v. Houston, supra; Bolin v. Huffnagle, 1 Rawle (Pa.) 9; 35 Cyc. 189. In 5 Cyc. 165, in discussing the sufficiency of the delivery in order to constitute an actual bailment, it is said:

"Such a full delivery of the subject-matter must be made to the bailee as will entitle him to exclude for the time of the bailment the possession of the owner, as will make him liable as its sole custodian to the latter in the event of his neglect or fault in discharging his trusts with respect to the subject-matter, and as to require a redelivery of it by him to the owner or other person entitled to receive it after the trusts of the bailment have been discharged. Where the delivery can be constructive only, there must be an intention to transfer the possession of the property."

In Fletcher v. Ingram, 46 Wis. 202, 50 N. W. 425, the court said:

"To constitute a person a bailee of property, he must have such full and complete possession of it as to exclude, for the time of the bailment, the possession of the owner (Benjamin on Sales, § 174), and he should have so far assumed the charge and control of the property as to be the custodian of it,.

as to be liable to the owner for any losses or damages occasioned by his neglect or fault in the manner in which he discharges his trusts with respect to it."

II. A constructive bailment arises where the person having the possession of a chattel holds it under such circumstances that the law imposes upon him the obligation of delivering it to another.

From the definition of the two subdivisions of actual bailment, and from the definition of a constructive bailment, there ought to be no difficulty in determining whether there was in the case at bar a bailment of the plaintiff's overcoat. Neither the defendant nor his agents ever had the real possession of the overcoat, and therefore there was not an *actual* delivery of the coat. The facts proved are inconsistent with the hypothesis that the plaintiff intended to transfer to the defendant or his servants such a possession of the coat as would exclude, for the time of the bailment, the possession of the owner. The overcoat hung upon a hook within two feet of where the plaintiff was sitting during the meal, and it does not seem to be capable of dispute that during that time the defendant did not have such a possession of it as to exclude the possession of the plaintiff. If the plaintiff had wished to reach his overcoat at any time during the meal, either to take something from one of the pockets of the coat or for any other purpose, he was entirely free to do so, without requiring any act on the part of the defendant or his servants. The presence of the hooks may be construed into a invitation to the patron to hang his coat upon them; but hanging the coat upon the hook cannot be reasonably held to constitute a delivery of the coat to the *exclusive* possession of the defendant. The hooks were obviously placed there for the convenience of the patron, provided he wished to retain possession of his coat. If he wished to deposit the coat in the exclusive possession of the defendant, he should have availed himself of the accommodations which the defendant provided for that purpose. If he had done this, the defendant would have been liable. Buttman v. Dennett, 9 Misc. Rep. 462, 30 N. Y. Supp. 247. The frequency with which the plaintiff was accustomed to visit the defendant's restaurant leaves no room for doubt that he knew of the accommodations provided by the defendant for caring for the hats, coats, and other articles of his patrons.

In the case at bar it does not appear that the defendant or any of his servants ever saw, much less received, the overcoat. How the defendant, under all the circumstances disclosed, can be held to have had exclusive possession of the overcoat, is not clear to me. Bunnell v. Stern, 122 N. Y. 539, 25 N. E. 910, 10 L. R. A. 481, 19 Am. St. Rep. 519, Bird v. Everard, 4 Misc. Rep. 104, 23 N. Y. Supp. 1008, Buttman v. Dennett, 9 Misc. Rep. 462, 30 N. Y. Supp. 247, and Delmour v. Forsythe (Sup.) 128 N. Y. Supp. 649, were decided upon the ground that the special circumstances disclosed warranted the inference that the bailee assumed the temporary custody of the chattel. Even though the decision in Bunnell v. Stern, supra, was placed upon this ground, I think that that case extended the rule applicable to this subject very far, and the decision of the Court of Appeals in Wamser v. Browning, King & Co., 187 N. Y. 87, 79 N. E. 861, 10 L.

R. A. (N. S.) 314, I interpret to mean that the rule declared in Bunnell v. Stern will not be extended to cover cases not identical with it.

In Pattison v. Hammerstein, 17 Misc. Rep. 375, 39 N. Y. Supp. 1039, it was held that the manager of a theater, in the absence of special agreement, was not liable for his patrons' property, though it consisted of apparel which is usually laid aside by them while attending the play, and is not responsible for the loss thereof while it is hanging on a hook in the box occupied by the patrons, unless he or his servants have been guilty of negligence or wrongful act. In that case Mr. Justice Bischoff said:

"A bailment implies the delivery of a chattel; and, to subject one to liability as a bailee, it is a constituent that he had voluntarily assumed or retained the custody of the chattel alleged to have been bailed. * * * There was no invitation to the plaintiff, express or implied, held out by the defendant, that the former should yield his personal vigilance even for a moment. The hooks provided by the defendant were a means of enabling the occupants of the box to care for their apparel with greater ease and comfort to themselves; but an effort to imply from the mere presence of such hooks an assumption by the defendant of the custody of whatever the occupants of the box might place thereon tortures reason."

I think that the views herein expressed are further fortified by Wamser v. Browning, King & Co., 187 N. Y. 87, 79 N. E. 861, 10 L. R. A. (N. S.) 314, Harris v. Child's Unique Dairy Co. (Sup.) 84 N. Y. Supp. 260, Montgomery v. Ladjing, 30 Misc. Rep. 92, 61 N. Y. Supp. 840, and Duckworth v. Codington Co. (Sup.) 136 N. Y. Supp. 68.

The facts of this case, viewed in the light of the foregoing authorities, seem to me to establish that there was no actual bailment, because there was neither an actual nor a constructive delivery of the coat. That this is not a case of constructive bailment is apparent from the fact that the defendant never had the actual possession of the coat.

It follows that there was neither an actual nor a constructive bailment, and, as there is no other ground, under the facts in this case, upon which the defendant's liability can be predicated, the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.