# NATIONAL FIRE INSURANCE COMPANY, INC.
## v. COMMODORE HOTEL, INC.

107 N. W. (2d) 708.

February 3, 1961—No. 38,057.

350

*Robins, Davis & Lyons* and *Donald C. Hanson,* for appellant.
*Oliver, Gearin, Price & Melzarek,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Action by National Fire Insurance Company, Inc., as subrogee of Mrs. Philip Mushkatin, against Commodore Hotel, Inc., a corporation, to recover the value of a mink jacket stolen from Mrs. Mushkatin while she was attending a luncheon on the defendant's premises. Plaintiff as insurer of the jacket reimbursed Mrs. Mushkatin for its loss in the sum of $2,000. In this action it seeks to recover this amount from defendant on the ground that responsibility for the loss rests upon the latter.

The trial court found: (1) That the plaintiff was subrogated to the rights of Mrs. Mushkatin in any claims against the defendant; (2) that defendant was not a bailee of the mink fur jacket, which jacket Mrs. Mushkatin placed in the cloakroom of the hotel of the defendant; (3) that plaintiff failed to establish that defendant was negligent in any respect regarding the loss by theft of the mink fur jacket. This appeal is from an order denying plaintiff's subsequent motion for a new trial.

On appeal plaintiff contends that the evidence compels a finding that defendant had assumed a bailment relationship with respect to the jacket and accordingly had assumed a duty to exercise some degree of care therefor and had been negligent in carrying out such responsibility.

On November 1, 1957, the date of the loss, Mrs. Mushkatin was a guest at a luncheon held at the Commodore Hotel. Hostess for the

luncheon was Mrs. Yale Johnson, wife of one of the principal stockholders of defendant. Some 40 or 50 women attended the luncheon which was served in a downstairs dining room. At the suggestion of Mrs. Johnson, Mrs. Mushkatin and other guests hung their coats in a cloakroom on the main floor across from the lobby desk. This room is described as having a Dutch-type or half door as well as a full door. The cloakroom was unattended. Mrs. Mushkatin testified she had used it for similar purposes on some 50 prior occasions and that on most of such occasions no one was in attendance in the room.

After the luncheon the guests engaged in a card game until about 4:30 p. m. When Mrs. Mushkatin and another lady then went to the cloakroom to obtain their coats, they discovered that their coats had been removed.

■ We are of the opinion that the evidence outlined is insufficient to establish that a bailment relationship covering the mink jacket existed between Mrs. Mushkatin and defendant on the occasion described. To create such a relationship there must be delivery of goods from one person (the bailor) to another (the bailee) without a transfer of ownership and acceptance of such delivery by the bailee upon an agreement, either express or implied, that the goods are to be returned to the bailor or otherwise accounted for. The bailee's duty to exercise due care with respect to the goods arises because of his acceptance of their possession and his subsequent custody and control over them. Norris v. Boston Music Co. 129 Minn. 198, 151 N. W. 971, L. R. A. 1917B, 615; Dennis v. Coleman's Parking & Greasing Stations, 211 Minn. 597, 2 N. W. (2d) 33.

■ Here it is undisputed that Mrs. Mushkatin did not inform defendant or any of its employees that she was leaving a valuable fur jacket in one of the unattended rooms. At no time did she surrender possession of the jacket to the defendant or its employees. There is nothing to indicate that defendant assumed any custody or control over it. Likewise, there is nothing to sustain a finding that there was a constructive or implied delivery of the property from Mrs. Mushkatin to the defendant. Mrs. Mushkatin knew that had she so desired she could have obtained her jacket at any time without the need of consent on the part of anyone representing defendant. As stated in

Wentworth v. Riggs, 79 Misc. 400, 406, 139 N. Y. S. 1082, 1087, dissenting opinion, adopted by majority in Id. 159 App. Div. 899, 143 N. Y. S. 955, 957:

"* * * Neither the defendant nor his agents ever had the real possession of the overcoat, and, therefore, there was not an *actual* delivery of the coat. The facts proved are inconsistent with the hypothesis that the plaintiff intended to transfer to the defendant or his servants such a possession of the coat as would exclude, for the time of the bailment, the possession of the owner. * * * If the plaintiff had wished to reach his overcoat at any time during the meal, either to take something from one of the pockets of the coat or for any other purpose, he was entirely free to do so, without requiring any act on the part of the defendant or his servants. The presence of the hooks may be construed into an invitation to the patron to hang his coat upon them, but hanging the coat upon the hook cannot be reasonably held to constitute a delivery of the coat to the *exclusive* possession of the defendant."

■ Plaintiff contends that the finding that the defendant was not a bailee of the mink fur jacket of Mrs. Mushkatin, which jacket Mrs. Mushkatin placed in the cloakroom of the hotel of the defendant, is contrary to the evidence and is in reality a conclusion of law.

Rule 52.01 of Rules of Civil Procedure provides:

"In all actions tried upon the facts without a jury * * * the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * *."

In State, by Clark, v. Wolkoff, 250 Minn. 504, 519, 85 N. W. (2d) 401, 411, this court stated:

"* * * We know of no rule requiring the trial court to state every fact. * * * Only the ultimate issuable facts must be found. Where the decisive facts, as found by the trial court, are sustained by the evidence, it is not necessary to specifically discuss proposed findings of fact which would not change the result."

As indicated above there was no evidence here that when Mrs. Mushkatin placed her jacket in defendant's cloakroom she surrendered con-

trol or custody of it to defendant or to any of its employees. There likewise was no evidence that defendant accepted custody or control of the jacket at that time or even that it was aware that Mrs. Mushkatin expected it to do so. While the finding complained of might well have spelled out the facts in more detail, we do not feel that the failure in this respect is fatal. See, Graphic Arts Educational Foundation, Inc. v. State, 240 Minn. 143, 145, 59 N. W. (2d) 841, 844, construing Minn. St. 546.27.

■ Plaintiff asserts that, regardless of the issue of bailment, the evidence compels a finding that defendant was negligent. The basis of establishing a right of recovery on this theory where no bailment is established is referred to in the editorial summary accompanying Annotation, 1 A.L.R. (2d) 802, 804, as follows:

"The second theory upon which the customer may proceed in predicating liability * * * is that of proving the owner's negligence, without proving a bailment. * * * negligence is rather difficult to prove in these cases, since, ordinarily, no one knows exactly how and when the property is lost and the customer is usually forced into trying to make out his case on the ground of negligence in the general supervision exercised over the place of business for the protection of the property of customers in general. * * * under the theory of negligence, proof of loss does not make out a prima facie case putting the burden on the owner of the business of proving that the loss occurred without his fault, as in the case of a bailment."

Plaintiff contends that, because defendant here left the cloakroom unattended and failed to warn patrons that its use was at their own risk; or failed to close it altogether, it became liable for the loss of the jacket. No cases are submitted to support this contention. Examination of the record indicates that at the trial plaintiff relied upon bailment to establish liability. In any event, we do not feel that it is incumbent upon a hotel or restaurant owner to keep an attendant in charge of a free cloakroom for luncheon or dinner guests or otherwise face liability for loss of articles placed therein. The maintenance of such rooms without attendants is a common practice, and where the proprietor has not accepted control and custody of articles placed therein, no duty

rests upon him to exercise any special degree of care with respect thereto.

Likewise, failure to post a warning disclaiming responsibility would not seem to constitute negligence when, as here, a guest is aware that a cloakroom is unattended, adjacent to the lobby, and accessible to anyone, and has used it under similar circumstances on many prior occasions. The absence of such warning signs does not appear to have been material in a number of decisions absolving proprietors from liability, although when posted they appear to be regarded as an added factor in establishing such nonliability. See cases cited in Annotation, 1 A. L. R. (2d) 810.

The rule which in our opinion should apply here is well expressed in Nolde v. WDAS Broadcasting Station, Inc. 108 Pa. Super. 242, 246, 164 A. 804, 805, where the court stated:

"* * * plaintiff knew that the reception room was open and any one could have access thereto from the foyer of the hotel. * * * she must be presumed to have assumed the risk of loss. It is similar to the case of one who hangs his coat on a rack or hook in a restaurant * * *.

"Neither actual nor implied bailment or constructive custody having been established, there is no evidence of * * * negligence on part of the defendant in the general supervision exercised over the reception room * * *."

See, also, Corrigan v. San Marcos Hotel Co. (9 Cir.) 182 F. (2d) 719.
     Affirmed.