JAMES ROGER EKHOLM v. WILKINS DODGE, INC.

212 N. W. 2d 890.

November 30, 1973—No. 43587.

*Meier, Kennedy & Quinn* and *Gordon W. Shumaker,* for appellant.

*Berde, Leonard & Weinblatt* and *Alan W. Weinblatt,* for respondent.

PER CURIAM.

Plaintiff brought this action in St. Paul conciliation court to recover the purchase price of a used automobile which he had purchased from defendant. Defendant removed the case to municipal court for a trial de novo after plaintiff obtained a judgment for $152 in conciliation court. The municipal court judge, who heard the case without a jury, also ordered judgment for plaintiff for $152. Defendant appeals from an order denying his motion for a new trial. We affirm.

On August 14, 1969, approximately 3 months after he purchased the automobile from defendant for $164 in cash, plaintiff received a copy of a letter which the motor vehicle division (hereafter division) of the office of the secretary of state sent to defendant stating that it had received a bill of sale showing that defendant sold the automobile to plaintiff but that the division did not have a bill of sale showing that the prior owner had sold it to defendant. The letter asked defendant to "furnish the required bill of sale promptly so we may proceed to complete the transfer to the new owner." Plaintiff, not knowing that this letter was the result of a mixup at the division, called defendant and talked with a secretary, who said she would look into the matter. The sales manager testified that an employee of defendant checked and learned that the division had made a mistake in sending the letter because it had in fact received the proper bill of sale. However, no one connected with defendant at any

time informed plaintiff of this. On September 12 or 13, plaintiff drove the automobile to defendant's lot, parked it, and told the salesman that he wanted his money back and that even if he didn't get a refund, he was going to leave the automobile there until he received a title card. He was told that defendant would not refund the purchase price nor would it permit plaintiff to leave the automobile there. Plaintiff put his keys on the desk and left. One of defendant's employees apparently removed the automobile from the lot and parked it on the street. On September 16, a towing company, because of illegal parking, removed it from the street. On October 3, plaintiff received the title card, but by that time the towing company had disposed of the automobile.

The difficult and decisive issue in this case is not, as the parties suggest, whether defendant breached an implied warranty of title, thereby giving plaintiff a right to revoke his acceptance,[1] but rather whether defendant had a duty to plaintiff which it breached when it removed the automobile from its lot and parked it on the street. If defendant had such a duty, then defendant is liable for the loss of the automobile because it was reasonably foreseeable that the automobile would be ticketed and towed.

Had defendant consented to let plaintiff leave his automobile in its care, this would then be a conventional bailment case and we would have no difficulty in affirming. However, our cases hold that a bailee is not subject to any duty of care toward another's property thrust into his control unless he not only knows he has it but also consents to its being in his possession. Schrunk v. Andres, 221 Minn. 465, 22 N. W. 2d 548 (1946); Houghton v. Lynch, 13 Minn. 80 (85) (1868).

Yet the fact that a conventional bailment relationship did not exist between plaintiff and defendant does not mean that defendant had no duties and responsibilities to plaintiff. As a seller of

---

[1] Because the letter resulted from a mistake and because plaintiff eventually received his title card, defendant cannot be said to have breached the warranty of title.

the automobile, defendant had an implied contractual duty to mail the bill of sale to the division so that plaintiff could obtain his title card. When plaintiff called defendant and complained about the letter from the division, defendant had a duty to investigate the matter. While defendant did contact the division and did ascertain that there had been a mixup, defendant did not communicate this to plaintiff. Had defendant properly informed plaintiff of what it had learned, the difficulties that followed could have been avoided. As it was, plaintiff, not having heard from defendant and fearing that defendant might not have had good title to the automobile, felt that it was time to take action and so, wisely or not, he returned the automobile to defendant. When plaintiff returned the automobile and delivered the ultimatum, defendant again had an opportunity to resolve the matter by informing plaintiff that it had investigated and had learned that plaintiff would soon be receiving the title card. Instead, defendant simply informed plaintiff that he could not leave his automobile on the lot.

We are persuaded that these peculiar facts—defendant's forced possession of the automobile and its knowledge of the true facts concerning title, and plaintiff's ignorance thereof and not unreasonable return of the automobile—give rise under broad principles of bailment to at least a duty on defendant's part to inform plaintiff concerning the title or, failing that, to protect against the hazards of illegally parking the automobile on the street. Having breached its duty arising from what may be characterized as a border-type bailment claim sounding in tort, defendant should be responsible for the resulting loss. See, Laidlaw, *Principles of Bailment,* Fryer, Readings on Personal Property (3 ed.) p. 165.

Affirmed.

OTIS, JUSTICE (dissenting).

The majority concedes that a conventional bailment relationship did not exist between plaintiff and defendant and that the

defendant did not breach any warranty of title but nonetheless finds a duty on the part of the defendant toward the plaintiff concerning his automobile. It cites no authority for its conclusion. We have heretofore reached a contrary result. Characterizing this duty as arising from "a border-type bailment claim sounding in tort," the majority affirms imposition of the loss upon the defendant.

Minnesota law provides no legal basis for such an affirmance. It is clear that three elements are necessary in order to create a bailment relationship: (1) Delivery without transfer of ownership; (2) implied or express acceptance; and (3) an express or implied agreement that the goods be returned. Wallinga v. Johnson, 269 Minn. 436, 438, 131 N. W. 2d 216, 218 (1964); National Fire Ins. Co. v. Commodore Hotel, 259 Minn. 349, 351, 107 N. W. 2d 708, 709 (1961); Dennis v. Coleman's Parking & Greasing Stations, Inc. 211 Minn. 597, 600, 601, 2 N. W. 2d 33, 34, 35 (1942). In the instant case, the facts do not under any theory support an acceptance on the part of defendant or an agreement by defendant to return the car. On the contrary, the defendant's sales manager told plaintiff he could not leave the car on the premises. Plaintiff nonetheless did so. The fact that defendant's employee removed it does not constitute an exercise of dominion and control or an acceptance necessary to create a bailment relationship. No one has an obligation to retain possession of another person's property if he expressly rejects that responsibility.

The situation here is similar to that in Schrunk v. Andres, 221 Minn. 465, 22 N. W. 2d 548 (1946). In Schrunk, the defendant took a lease on land formerly rented to plaintiff on which plaintiff had left secondhand cars. The defendant requested they be removed. Subsequently, plaintiff sued defendant, claiming a bailment relationship and damages for defendant's negligence in permitting a conversion of the cars by third persons. We found no bailment and no responsibility on the part of defendant since

there was no agreement between plaintiff and defendant and held as follows (221 Minn. 472, 22 N. W. 2d 553):

"* * * Bailment is based upon the transfer of goods pursuant to *agreement*, express or implied, that they will be returned or accounted for by the parties to whom they are delivered. 1 Dunnell, Dig. & Supp. § 728, and cases cited. Here, there was no contract of any kind between plaintiff and defendant, and defendant at all times insisted that plaintiff remove the property from his premises. In consequence, defendant cannot be held as bailee of said property, and no responsibility attached to him for its care or custody."

Similarly, in my opinion there is no bailment or quasi-bailment in the instant case. I would reverse.

PETERSON, JUSTICE (dissenting).
I join in the dissent of Mr. Justice Otis.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the submission, took no part in the consideration or decision of this case.