PRODUCTION CREDIT ASSOCIATION
OF ST. CLOUD, Appellant,

v.

Mike FITZPATRICK, Respondent.

Farmers Co-op Creamery Co., Foreston,
Minnesota, Defendant.

No. C2–85–1606.

Court of Appeals of Minnesota.

April 22, 1986.

Thomas A. Janson, Schmitt, Johnson & Marso, St. Cloud, for appellant.

William A. Torell, Torell Law Office, Foley, for respondent.

Heard, considered and decided by NIER-ENGARTEN, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

LESLIE, Judge.

This appeal arises from a judgment determining that Mike Fitzpatrick held a possessory lien superior to that of Production Credit Association in the amount of $9,336.90, and from an amended judgment awarding Fitzpatrick $9,575.94 to reflect the costs of electricity plus interest. We affirm.

## FACTS

In the fall of 1981, Allen Kampa, not a party to this lawsuit, entered into an oral agreement with respondent Mike Fitzpatrick to store part of Kampa's corn harvest in space provided in respondent's 12,000 bushel grain bin at a price of $.02 per bushel per month. Kampa's corn was put into the bin in late November or early December.

Kampa made several monthly payments but was unable to continue paying. The corn later became part of the Payment-in-Kind (PIK) program and was assigned by Kampa to appellant Production Credit Association and the Farmers Co-op Creamery Company. On November 1, 1983, the corn was released from the PIK program and appellant sought to take possession of it. Respondent refused to relinquish possession, claiming a lien on the corn for Kampa's unpaid storage costs. In December 1983, Kampa filed for relief under the Bankruptcy Act, and the corn became part of the bankruptcy estate. The trustee in bankruptcy released the corn to appellant and again respondent refused to permit appellant to take possession of the corn.

The corn remained in respondent's bin until August 1984, when appellant, by agreement of the parties, sold the corn and filed a $10,000 surety bond to protect respondent's claim.

Appellant brought suit against respondent and Farmers Co-op Creamery Company seeking, among other things, a determination that appellant was entitled to possession of the corn and that respondent had no lien. At trial, appellant argued that Kampa rented the storage bin from respondent, thereby creating a landlord-tenant relationship. Respondent argued that the agreement between he and Kampa was that of a bailment, entitling respondent to a lien under Minn.Stat. § 514.18, subd. 1 and § 514.19(2) (1984).

The trial court entered judgment finding that the agreement between Kampa and respondent constituted a bailment. The court permitted respondent to amend his counterclaim to recover damages against appellant for storage of the corn plus interest. The court also amended its findings to include reimbursement for electricity expended in running the aerator to ventilate the bin plus interest. The trial court ordered judgment entered against appellant in the amount of $9,575.94 plus costs and disbursements.

## ISSUES

1. Did the trial court err in finding a bailor-bailee relationship entitling respondent to a possessory lien pursuant to Minn. Stat. § 514.18 and § 514.19?

2. Did the trial court abuse its discretion in permitting respondent to amend his counterclaim after trial to include a request for money damages?

## ANALYSIS

1. When someone, other than a "warehouseman" under article 7 of the Uniform Commercial Code, keeps or stores property as a bailee at the request of the owner, that person is entitled to a lien on the property for the price or value of storage and care. Minn.Stat. § 514.18, subd. 1 (1984); Minn.Stat. § 514.19(2) (1984).

Appellant's position is that Minn.Stat. § 514.19(2) does not apply to this situation because respondent and Kampa had a landlord-tenant relationship rather than a bailor-bailee relationship. Because the applicable statutes do not define bailment or bailee, it is necessary to resort to common law. The Minnesota Supreme Court has defined bailment as "the legal relation arising upon delivery of goods without trans-

ference of ownership under an express or implied agreement that the goods be returned." *Wallinga v. Johnson,* 269 Minn. 436, 438, 131 N.W.2d 216, 218 (1964) (bailment relationship created where hotel guest's rings were placed in safety deposit envelopment in hotel safe); *see National Fire Insurance Co. v. Commodore Hotel, Inc.,* 259 Minn. 349, 107 N.W.2d 708 (1961) (no bailment relationship created where mink jacket was stolen from hotel's unattended cloakroom); *Dennis v. Coleman's Parking & Greasing Stations,* 211 Minn. 597, 2 N.W.2d 33 (1942) (bailment relationship existed between operator of public parking lot and customer leaving car with keys); *Huntoon v. Brendemuehl,* 124 Minn. 54, 144 N.W. 426 (1913) (bailment existed rather than rental of storage space where bushels of potatoes stored at warehouse at $.05 per bushel).

The case of *J.I. Case Co. v. Jansa,* 190 Minn. 518, 252 N.W. 436 (1934), is instructive. In *Jansa,* the plaintiff corporation entered into conditional sales contracts with the defendant dealer whereby the plaintiff agreed to ship farm machinery and implements and the dealer agreed to resell them to its customers and then pay plaintiff. The plaintiff retained title to all goods and proceeds of goods until resold and paid for, and the defendant agreed, among other things, to store, protect, and care for the machinery. The dealer, defendant Jansa, not having storage room for plaintiff's goods, arranged for storage in the warehouse of defendant Coggins. Coggins later notified plaintiff that it owed storage costs and that he claimed a lien on the property.

The supreme court, rejecting the argument that Jansa was a lessee of part of the building, relied on the following facts: (1) No lease or agreement was made as to any particular space or part of the warehouse; (2) No time was fixed and no sum agreed to for storage; (3) Others were also storing goods in the warehouse; (4) Substantially the same amount of goods was kept by Jansa in the warehouse at all times; (5) Coggins had control of the warehouse; (6) Coggins could have excluded Jansa and

plaintiff from the warehouse and claimed a lien at any time after storage costs were owing. *Id.* at 521–22, 252 N.W. at 437. Thus, the court found sufficient evidence to sustain the verdict that Coggins had a statutory lien for storage costs on goods to which plaintiff had legal title and to which Jansa had legal possession.

We find sufficient evidence to support the trial court's finding of a bailment in the present case. Kampa made an agreement with respondent to store the corn. Respondent testified that there was no transference of ownership of the corn, and it was anticipated that the corn would be returned to Kampa at some later date. Although respondent and Kampa did not contract for any special duty of care as such, the bailment relationship was reciprocally beneficial to both parties. Thus, respondent's duty of care was to provide ordinary and reasonable care. *See Peet v. The Roth Hotel Co.,* 191 Minn. 151, 155, 253 N.W. 546, 548 (1934).

Furthermore, there was evidence that respondent maintained exclusive control of the grain bin, and absent a court order, he excluded Kampa and appellant from taking the corn prior to their paying storage costs. The fact that Kampa or appellant had the right to inspect and care for the corn during their respective periods of ownership does not take the control away from respondent. In addition, the fact that the parties did not know how much corn would be put into the bin supports a finding of a bailment rather than a landlord-tenant relationship. Had Kampa put 12,000 bushels into the bin, he would have paid $240 per month; had he put in 10,000 bushels, he would have paid $200 per month and respondent could have used the remainder of the storage space for other corn.

Finally, Minn.Stat. § 514.18 and § 514.19 and their predecessors were enacted to protect the individual who, although not a warehouse operator by trade, provided storage nonetheless. *See Grice v. Berkner,* 148 Minn. 64, 67, 180 N.W. 923, 924 (1921). With the adoption of the Uniform

Commercial Code in 1965, the Minnesota Legislature apparently recognized the better remedies available to a "warehouseman" under the Code and therefore removed "warehouseman" from the application of Minn.Stat. § 514.18–.19. The legislature left in place, however, the possessory lien to protect the private person who agrees to store personal property.

2. Appellant's next argument is that the trial court erred in permitting Fitzpatrick to amend his counterclaim after trial to include a request for a money judgment. Appellant argues that it has been prejudiced, claiming that if respondent had a cause of action at all against appellant, the cause of action was limited to a lien on the corn. In addition, appellant contends that it had no opportunity to present rebuttal evidence on the issue of damages.

■ We find no abuse of discretion in the trial court's decision to grant respondent's motion to amend the counterclaim. Minn.R.Civ.P. 15.02 provides as follows:

> [T]he court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that admission of such evidence would prejudice him in maintaining his action or defense upon the merits.

Appellant posted a bond in the amount of $10,000, and the case was tried on the issue of whether respondent was entitled to collect against appellant's bond on his claim for storage costs. Therefore, we find that appellant was not prejudiced by the amendment.

### DECISION

The trial court did not err in finding a bailment relationship entitling respondent to a statutory lien for storage costs. The trial court did not abuse its discretion in permitting respondent to amend his counterclaim to include a request for money damages.

Affirmed.