## WENTWORTH v. RIGGS.

(Supreme Court, Appellate Division, First Department. November 7, 1913.)

1. BAILMENT (§ 1*)—WHAT CONSTITUTES—POSSESSION.

     A "bailment" consists of the holding of a chattel by one person under an obligation to return or deliver it to another after some special purpose is accomplished. It may be actual or constructive. An actual bailment exists when there is an actual delivery of the property to the bailee or his agents, or a constructive delivery comprehending all those acts which, not truly comprising real possession, have been held by legal construction equivalent to acts of real delivery which includes symbolical or substituted delivery. A constructive bailment arises when the person having possession holds it under such circumstances that the law imposes an obligation to deliver to another.

     [Ed. Note.—For other cases, see Bailment, Cent. Dig. §§ 1–12; Dec. Dig. § 1.*

     For other definitions, see Words and Phrases, vol. 1, pp. 673–676.]

2. INNKEEPERS (§ 11*)—RESTAURANT—CLOTHING OF GUEST—POSSESSION BY RESTAURATEUR.

     Defendant operated a restaurant, providing hooks near the tables for the outer garments of guests, and also a checkroom where such garments might be left in the custody of one of his servants. Plaintiff, having knowledge of these facilities, was assigned a seat at a table and hung his overcoat on a hook within two feet of where he was sitting, and during his meal it was removed or stolen. There was no evidence that defendant or any of his servants ever saw the coat or received it into their possession. *Held*, that there was no bailment, and that, in the absence of proof of negligence, defendant was not liable for the loss.

     [Ed. Note.—For other cases, see Innkeepers, Cent. Dig. §§ 3, 17–40; Dec. Dig. § 11.*]

     Scott, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Appellate Term, First Department.

Action by Reginald de M. Wentworth against Leon C. Riggs. From a Municipal Court judgment in favor of plaintiff, affirmed at the Appellate Term (79 Misc. Rep. 400, 139 N. Y. Supp. 1082), defendant appeals. Reversed, and complaint dismissed, with costs, on the following dissenting opinion of Seabury, J., at the Appellate Term:

I am unable to agree with the views expressed in the prevailing opinion.

In view of the precautions taken by the defendant to police and care for the property of his patrons, I think it is evident that he cannot be held liable for the loss of the overcoat upon any theory of negligence unless there was a bailment. If the defendant is to be held liable at all, it can only be upon this latter theory. Confusion has been engendered by certain cases, which seem to discuss constructive bailment as if it were identical with constructive delivery. The two things are distinct. Formerly, delivery was regarded as the essence of a bailment. As this branch of the law has developed, cases of constructive bailment have been recognized covering cases where there had been no delivery either actual or constructive, as where one held the possession of a chattel under such circumstances that the law placed upon the person having the possession of the chattel the obligation to deliver it to another. The typical instance of such a constructive bailment is where one sells a chattel to another, who pays the price thereof, and the vendor refuses to deliver it to the vendee. Here the law implies the contract of bailment, and holds the vendor answerable as bailee. In such a case it is apparent that there has been no delivery by the bailor to the bailee, and yet the bailment exists constructively. All the other examples of constructive bailment which are given in the books, as in the case of a finder, of a captor or salvor, of an attaching officer, are cases where the person having possession of the chattel is held to be a bailee, although there has never been either an actual or a constructive delivery of the chattels to the bailee by the bailor. In other words, the essential fact of legal significance in all these cases is possession. It certainly is not delivery, for, in none of these cases of constructive bailment, is there either an actual or a constructive delivery.

[1] The older definitions of the term "bailment" seem to accentuate merely the necessity for the delivery. Chief Justice Holt, in his celebrated opinion in Coggs v. Bernard, 2 Ld. Raym., 909, 1 Smith, Lead. Cas. 354, which is supposed to have laid the foundations of the English law of bailment, divides bailment into six different sorts or classes and defines each. Delivery is in every case the essential element in Lord Holt's definition.

So, also, Sir William Jones Blackstone, Mr. Justice Story, and Chancellor Kent all give definitions of the term "bailment," which state that there must be a delivery. Jones on Bailment, 1, 117; 2 Black. Comm. 451; 2 Kent's Com. Lect. 40, p. 558 (4th Ed.); Story on Bailment, p. 5. Mr. Schouler, in his American notes to Coggs v. Bernard, in the ninth American Edition of Smith's Leading Cases (volume 1, p. 400), quotes the following definition of the term "bailment" from Bouvier's Dictionary:

"A delivery of some chattel by one party to another. to be held according to the special purpose of the delivery, and to be returned or delivered over when that special purpose is accomplished."

After commenting upon the conciseness of this definition, and admitting that it conforms fairly to the term "bailment" itself, Mr. Schouler says:

"But this writer finds such a scope too narrow to meet a number of instances which are properly referred to in this branch of the law, as where there is no strict delivery, as in the case of a finder, of a captor or salvor, of an attaching officer, of a person selling goods and retaining possession for the new owner, and the like; for, while bailment imports literally delivery, the rights and duties fasten rather upon a possession acquired by the person in question than upon any contract or delivery. Hence we may essay this new definition of our own, that bailment consists in the holding of a chattel by some party under an obligation to return or deliver it over after some special purpose is accomplished."

This definition includes within its scope constructive bailment, whereas the

earlier definitions of Holt, Jones, Blackstone, Story, and Kent cover only cases of actual bailment.

I. In an actual bailment there must be a delivery of the chattels to the bailee or his agent. The delivery may be either actual or constructive. (a) An actual delivery consists in giving to the bailee or his agents the real possession of the chattel. Shindler v. Houston, 1 Denio (N. Y.) 48. (b) Constructive delivery comprehends all of those acts which, although not truly comprising real possession of the goods transferred, have been held constructione juris equivalent to acts of real delivery, and in this sense includes symbolical or substituted delivery. Shindler v. Houston, supra; Bolin v. Huffnagle, 1 Rawle (Pa.) 9; 35 Cyc. 189.

In 5 Cyc. 165, in discussing the sufficiency of the delivery in order to constitute an actual bailment, it is said:

"Such a full delivery of the subject-matter must be made to the bailee as will entitle him to exclude for the time of the bailment the possession of the owner, as will make him liable as its sole custodian to the latter in the event of his neglect or fault in discharging his trust with respect to the subject-matter, and as to require a redelivery of it by him to the owner or other person entitled to receive it after the trusts of the bailment have been discharged. Where the delivery can be constructive only, there must be an intention to transfer the possession of the property."

In Fletcher v. Ingram, 46 Wis. 202, 50 N. W. 425, the court said:

"To constitute a person a bailee of property, he must have such full and complete possession of it as to exclude, for the time of the bailment, the possession of the owner (Benjamin on Sales, § 174), and he should have so far assumed the charge and control of the property as the sole custodian of it, as to be liable to the owner for any losses or damages occasioned by his neglect or fault in the manner in which he discharges his trusts in respect to it."

II. A constructive bailment arises where the person having possession of a chattel holds it under such circumstances that the law imposes upon him the obligation of delivering it to another.

[2] From the definition of the two subdivisions of actual bailment, and from the definition of a constructive bailment, there ought to be no difficulty in determining whether there was in the case at bar a bailment of the plaintiff's overcoat. Neither the defendant nor his agents ever had the real possession of the overcoat, and therefore there was not an actual delivery of the coat. The facts proved are inconsistent with the hypothesis that the plaintiff intended to transfer to the defendant or his servants such a possession of the coat as would exclude, for the time of the bailment, the possession of the owner. The overcoat hung upon a hook within two feet of where the plaintiff was sitting during the meal, and it does not seem to be capable of dispute that during that time the defendant did not have such a possession of it as to exclude the possession of the plaintiff. If the plaintiff had wished to reach his overcoat at any time during the meal, either to take something from one of the pockets of the coat or for any other purpose, he was entirely free to do so. without requiring any act on the part of the defendant or his servants. The presence of the hooks may be construed into an invitation to the patron to hang his coat upon them, but hanging the coat upon the hook cannot be reasonably held to constitute a delivery of the coat to the exclusive possession of the defendant. The hooks were obviously placed there for the convenience of the patron, provided he wished to retain possession of his coat. If he wished to deposit the coat in the exclusive possession of the defendant, he should have availed himself of the accommodations which the defendant provided for that purpose. If he had done this, the defendant would have been liable. Buttman v. Dennett, 9 Misc. Rep. 462, 30 N. Y. Supp. 247. The frequency with which the plaintiff was accustomed to visit the defendant's restaurant leaves no room for doubt that he knew of the accommodations provided by the defendant for caring for the hats, coats, and other articles of his patrons.

In the case at bar, it does not appear that the defendant or any of his servants ever saw, much less received, the overcoat. How the defendant, under all the circumstances disclosed, can be held to have had exclusive possession of the overcoat, is not clear to me. Bunnell v. Stern, 122 N. Y. 539,

25 N. E. 910, 10 L. R. A. 481, 19 Am. St. Rep. 519, Bird v. Everard, 4 Misc. Rep. 104, 23 N. Y. Supp. 1008, Buttman v. Dennett, 9 Misc. Rep. 462, 30 N. Y. Supp. 247, and Delmour v. Forsythe, 128 N. Y. Supp. 649, were decided upon the ground that the special circumstances disclosed warranted the inference that the bailee assumed the temporary custody of the chattel. Even though the decision in Bunnell v. Stern, supra, was placed upon this ground, I think that that case extended the rule applicable to this subject very far, and the decision of the Court of Appeals in Wamser v. Browning, King & Co., 187 N. Y. 87, 79 N. E. 861, 10 L. R. A. (N. S.) 314, I interpret to mean that the rule declared in Bunnell v. Stern will not be extended to cover cases not identical with it. In Pattison v. Hammerstein, 17 Misc. Rep. 375, 39 N. Y. Supp. 1039, it was held that the manager of a theater, in the absence of special agreement, was not liable for his patrons' property, though it consisted of apparel which is usually laid aside by them while attending the play, and is not responsible for the loss thereof while it is hung on a hook in the box occupied by the patrons, unless he or his servants have been guilty of negligence or wrongful act. In that case Mr. Justice Bischoff said:

"A bailment implies the delivery of a chattel; and to subject one to liability as a bailee it is a constitutent that he had voluntarily assumed or retained the custody of the chattel alleged to have been bailed. * * * There was no invitation to the plaintiff, express or implied, held out by the defendant, that the former should yield his personal vigilance even for a moment. The hooks provided by the defendant were a means of enabling the occupants of a box to care for their apparel with greater ease and comfort to themselves, but an effort to imply from the mere presence of such hooks an assumption by the defendant of the custody of whatever the occupants of the box might place thereon tortures reason."

I think that the views herein expressed are further fortified by Wamser v. Browning, King & Co., 187 N. Y. 87, 79 N. E. 861, 10 L. R. A. (N. S.) 314; Harris v. Child's Unique Dairy Co., 84 N. Y. Supp. 260; Montgomery v. Ladjing. 30 Misc. Rep. 92, 61 N. Y. Supp. 840; and Duckworth v. Codington Co., 136 N. Y. Supp. 68.

The facts of this case, viewed in the light of the foregoing authorities, seem to me to establish that there was no actual bailment, because there was neither an actual or constructive delivery of the coat. That this is not a case of constructive bailment is apparent from the fact that the defendant never had the actual possession of the coat.

It follows that there was neither an actual nor constructive bailment, and, as there is no other ground under the facts in this case upon which the defendant's liability can be predicated, the judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

H. Wintner, of New York City, for appellant.
F. P. Woglom, of New York City, for respondent.

PER CURIAM. Determination reversed, and complaint dismissed, with costs, on dissenting opinion of Seabury, J., at the Appellate Term. Settle order on notice.

SCOTT, J., dissenting.