ISADORE APFEL, Respondent, *v.* WHYTE'S, INC., Appellant.

(Supreme Court, Appellate Term, First Department, March, 1920.)

**Restaurants — loss of overcoat — when proprietor not liable.**

> Plaintiff sat down to a meal in defendant's restaurant with his overcoat and hat hung up on a hook on a post in close proximity to the seat he was occupying. Upon starting to leave after his meal he asked for his coat and hat and his

waiter brought the hat but the coat was missing and never was found. *Held,* that a judgment for the value of the overcoat and a pair of gloves that were in one of the pockets will be reversed and the complaint dismissed.

APPEAL by defendant from a judgment of the Municipal Court of the city of New York, borough of Manhattan, second district, in favor of plaintiff, after trial by the court without a jury.

Young, Seacord & Ritchie (C. Parker Lattin, of counsel), for appellant.

Isadore Apfel, for respondent.

MULLAN, J. The plaintiff went to the defendant's restaurant, "Whyte's," on Fulton street, for lunch. He says he did not notice the hat-and-coat rack, in charge of a check boy, at the Fulton street entrance, by which he entered. He was escorted to a table, and either a waiter, or one of the assistants to the head-waiter, who have come to be known as "captains," helped him take off his overcoat, and took his hat and overcoat and hung them up on a hook on a post. The precise location of the hook in relation to plaintiff's chair was not fixed by the plaintiff. He did say, however, that it was "nearby." One of the defendant's "captains" testified that plaintiff told him that the coat "was hanging on the rack on the post at his right hand, right where he was sitting," and there was no rebuttal as to that. It would seem as if plaintiff must have seen the coat and hat as they were put on the hook. At least, he knew somehow that the coat and hat were placed on the same hook. It would also seem to be beyond doubt that the coat was at all times within his reach, or within a few feet of him, and possibly within his view. The

record is somewhat meagre and unsatisfactory in respect of these details. It was not even shown whether or not plaintiff was a frequent guest of the establishment, or whether he had ever before eaten there. I think it is clear, however, from what there is in the record, that the situation was the familiar one of a man sitting down to a meal in a restaurant, with his coat and hat hung up in close proximity to the seat he is occupying. When plaintiff finished his meal, and started to leave, he asked for his coat and hat, and his waiter brought the hat, but the coat was missing, and never was found. The judgment for plaintiff, for the value of the coat and a pair of gloves that were in one of the pockets, is assailed by the defendant, who cites *Wentworth* v. *Riggs,* 159 App. Div. 899, where the dissenting opinion of Seabury, J., at the Appellate Term (79 Misc. Rep. 403) was adopted by the Appellate Division. I can see no room for a valid distinction between that case and this. There a restaurant guest was seated near the hook on which his overcoat was hung. It did not appear whether or not there were any checking facilities. Judge Seabury, in writing for a reversal of the judgment for the plaintiff guest, stressed the point that the coat had not been placed in the exclusive possession of the restaurateur, and that the guest, had he at any time so desired, was at perfect liberty to take down his coat for any purpose, or to take out anything there might have been in a pocket of the coat. That, it seems to me, is the controlling consideration. How can it be said that the restaurant people have been given control of something that the owner may freely take at any moment without asking leave to do so? Furthermore, we are dealing with a subject that is a matter of every-day experience with most of us, a commonplace of life in a large city, and we know

that restaurant managers do not, and in the nature of things, cannot, station employees to stand guard over coats and hats, unchecked, and hung on hooks about the room. Even if there were such watchers, they would not know which coat belonged to a given guest. Nor can the waiter be expected to care for the coats and hats of the guests he is serving, for a large part of the time he is necessarily going to, coming from, and in, the kitchen. Checking stands or racks, with boys in charge, are provided in most restaurants of any size, except those that cater exclusively to persons seeking inexpensive meals, for the very purpose of relieving guests of the burden and worry of exercising care in respect of their coats, hats, umbrellas, sticks, hand-bags, and other things commonly carried into restaurants. Is it not a natural and instinctive thing for one whose coat has been hung up on a hook near his seat, occasionally to look in that direction to see that it is still there? I do not believe it enters into the head of such a guest to assume that he has thrown off all responsibility for the safety of his property; indeed, it seems to me that, on the contrary, he feels himself under a decided compulsion to guard it. A guest may, of course, enter into a special arrangement with a restaurant proprietor by which the guest's property shall become the subject of special care, but there is no pretense of any such express bailment here.

The respondent does not question the doctrine of the *Wentworth* case, but he seeks to have the distinction drawn that there the coat was at no time in the physical possession of an employee of the restaurant. I think the point is merely tenuous. Judge Seabury did, in the *Wentworth* case, refer to the fact there present that none of the restaurant people "ever saw, much less received," the coat. But that was ob-

Appellate Term, First Department, March, 1920.     [Vol. 110.

served in passing, as one of the facts of the case, and there is nothing in the opinion to warrant the belief that the decision was rested to any extent upon that ground. It seems to me to be quite clear that the act of the defendant's employee in helping plaintiff to hang his coat and hat was one of mere courtesy, an attention that is customary and familiar to us all; and that it falls far short of showing such an intrustment of the plaintiff's property to the defendant's care as would constitute a bailment.

For the reasons stated I advise that the judgment be reversed, and that the complaint be dismissed.

LEHMAN and FINCH, JJ., concur.

Judgment reversed, with thirty dollars costs.