ABRAHAM WIELAR, Respondent, *v.* SILVER STANDARD, INC., Appellant.

First Department, March 13, 1942.

*Max Schmer* of counsel [*Raphael H. Rosenbluth* with him on the brief; *Schmer, Shapiro & Wechsler*, attorneys], for the appellant.

*Abraham Wielar* of counsel [*Joseph Fishbein*, attorney], for the respondent.

GLENNON, J. The defendant was the owner of a self-service cafeteria at No. 38 Park row, borough of Manhattan, city of New York. The cafeteria consisted of two large dining rooms, one on the street floor and the other in the basement. A patron upon entering received a food check and went to a counter where food was selected and placed upon a tray. The tray was then carried to a table of the patron's own choice.

Plaintiff entered the cafeteria on December 10, 1940, and was handed a food check. He testified, " I selected some food, placed it on a table; took off my hat and coat, and hung my coat on a hook on a post, which was about three or four feet off my table." In

answer to a question of the court, he stated, " I never checked it." Further he testified, " I got up to get a drink of some beverage. I was probably less than a minute getting the beverage, and when I turned around and went back to my seat, my coat was gone. I spoke to the manager, who is here in court. I told him of the loss of my coat. I went around with him thinking, perhaps, it might be found in some other place in the restaurant but which couldn't be found. I then asked — someone came up to me and spoke to me while I was walking around, and said that coats had been stolen before." He brought this action on the theory of negligence to recover the value of the coat.

The manager of the restaurant testified that in the cafeteria there were two different kinds of signs, one of which read, " Not responsible for personal property unless checked," and the other, " Watch your overcoat, we are not responsible." The following question was asked of him: " Do you check coats of customers in that store? " to which he replied, " Only if they are requested."

The case was tried in the Small Claims Part of the Municipal Court, Borough of Manhattan, by an official referee who, after hearing the evidence, directed a judgment in favor of the defendant. Upon appeal to the Appellate Term of the Supreme Court, the judgment was reversed by a majority of the court with one justice dissenting.

Outside of the fact that the case now under consideration was tried on the theory of negligence, the situation here presented is similar to that which was before the Appellate Term of the Supreme Court, both in *Wentworth* v. *Riggs* (79 Misc. 400), which was reversed upon the dissenting opinion of one of the justices and reported in 159 Appellate Division, 899, and *Apfel* v. *Whyte's, Inc.* (110 Misc. 670). Both of those cases were tried on the theory of bailment. In the latter case, Mr. Justice MULLAN, writing for a unanimous court, said in part: " Furthermore, we are dealing with a subject that is a matter of every-day experience with most of us, a commonplace of life in a large city, and we know that restaurant managers do not, and in the nature of things, cannot, station employees to stand guard over coats and hats, unchecked, and hung on hooks about the room. Even if there were such watchers, they would not know which coat belonged to a given guest. * * * Checking stands or racks, with boys in charge, are provided in most restaurants of any size, except those that cater exclusively to persons seeking inexpensive meals, for the very purpose of relieving guests of the burden and worry of exercising care in respect of their coats, hats, umbrellas, sticks, hand-bags, and other things commonly carried into restaurants. Is it not a natural and instinctive

thing for one whose coat has been hung up on a hook near his seat, occasionally to look in that direction to see that it is still there? I do not believe it enters into the head of such a guest to assume that he has thrown off all responsibility for the safety of his property; indeed, it seems to me that, on the contrary, he feels himself under a decided compulsion to guard it. A guest may, of course, enter into a special arrangement with a restaurant proprietor by which the guest's property shall become the subject of special care, but there is no pretense of any such express bailment here."

The restaurant there in question was located in the lower part of Manhattan. The food served was not inexpensive and it is fair to assert that during the winter months it was the common practice for each one of the diners to remove his hat and coat. We know from experience that in a self-service cafeteria, such as we are dealing with here, removal of overcoats by patrons while eating is by no means a common practice. Customers usually are in a hurry and the food is inexpensive. It would be well nigh impossible for the management to guard its customers' unchecked hats and overcoats during the rush hour periods without employing such a large force of special policemen or watchmen as to make the cost almost prohibitive.

While there is evidence in the record to the effect that on a prior occasion in the month of October an overcoat had been stolen, still it seems to us that the failure of the management to detect the larceny of plaintiff's coat would not, in and of itself, under the circumstances constitute negligence. The referee properly could have found that if there were negligence on the part of the owner of the cafeteria, by the same token there was contributory negligence on the part of the customer.

The determination of the Appellate Term should be reversed and the judgment of the Municipal Court affirmed, with costs to the defendant in this court and in the Appellate Term.

MARTIN, P. J., O'MALLEY, TOWNLEY and UNTERMYER, JJ., concur.

Determination of the Appellate Term unanimously reversed and the judgment of the Municipal Court affirmed, with costs to the defendant in this court and in the Appellate Term.