G. M. ZUCCARELLO et al. v. J. T. CLIFTON.

Western Section. July 1, 1930.

J. C. Voorhies and W. J. Webster, of Columbia, for appellee.
Burnett & Donaldson, of Tiptonville, for appellant.

OWEN, J.  The defendant, W. S. Nunnelly, has appealed from a decree rendered against him in the Chancery Court of Lake county, in favor of Mrs. Kathleen Zuccarello and Miss Elva Foster Hellen. The bill was filed April 26, 1928, seeking to recover of the defendant and one J. T. Clifton, an amount sufficient to rebuild a certain two story brick building in Ridgley, Tennessee, which building was destroyed by fire in October, 1927.

About September 1, 1911, one R. E. Hellen, appointed as the regular guardian of the complainants, who were then minors and unmarried, their names being Kathleen Foster and Elva Foster, entered into the following contract:

"KNOW ALL MEN that I, R. E. Hellen, have this day leased and let to J. T. Clifton, a certain lot or lots of land belonging to Elva and Kathleen Foster, two minors for whom I was appointed guardian by the county court of Lake county, Tennessee, on the 18th day of January, 1910.  The parcel of land is situated in the town of Ridgley county and State aforesaid and is bounded on the north by the lands of J. W. Burton, on the east by lands of Harcher and on the south by lands of R. E. Hellen, on the west by land of Main street, containing 24x64 more or less.  For a term of eleven years, beginning on the 1st day of September, A. D. 1911, and expiring September 1, 1922.  TO HAVE AND TO HOLD unto him the said J. T. Clifton, his heirs and assigns for

the said term of eleven years. The consideration for the leasing of this: The said J. T. Clifton agrees and binds himself to improve the said lot or tract of land, to erect at once a substantial brick building on the said lot, which building, at the expiration of the eleven years becomes the property of the said Elva and Kathleen Foster, in consideration of the free use of the lot for the said eleven years. It is also understood that the said J. T. Clifton will keep the building in good and sufficient repair for the said term and will leave the said brick building in good and sufficient repair at the expiration of his said lease.

"It is also fully understood as a part of the consideration and a part of this contract that the said J. T. Clifton, his heirs and assigns, will not commit, but shall prevent all kinds of waste. It is further understood and made a part of this lease that the said J. T. Clifton, his heirs and assigns will deliver up the possession of said lot, together with all buildings thereon or thereto belonging, at the expiration of the said term, without notice to quit.

"In witness of this, I hereby unto sign my name, this 14th day of August, A. D. 1911.

"(Signed)    R. E. Hellen, Guardian."

Said lease contract was duly acknowledged and recorded on the 14th of February, 1913. J. T. Clifton conveyed in writing for the consideration of $3,000, his lease that he had procured from Hellen, guardian, together with the two story brick building which Clifton had erected thereon. It appears that Clifton completed the two story brick building in a very short time after procuring the lease from Hellen, guardian.

The defendant Nunnelly went into possession under his lease from Clifton, he insured the building, he remained in possession until the building was destroyed by fire and he collected $2,800 as damages for the building destroyed.

On December 5, 1918, R. E. Hellen, guardian of the two minors, filed a bill against the defendant Nunnelly to recover damages by reason of Nunnelly's failure to rebuild the burned building or to recover the insurance that had been paid to Nunnelly. This bill was dismissed on demurrer, the court holding that the suit was premature.

Complainants alleged in the instant bill that it would take $7500 to rebuild the building in the same condition as it was when it was destroyed by fire. There was a demurrer to the bill in the instant case, the principal grounds being, that complainants were barred by the statute of limitation. This demurrer was overruled with leave to rely upon it in the defendant's answer. After an answer was filed a large number of depositions were taken and there was quite a conflict as to the amount it would take to rebuild a building equal to the one destroyed by fire. The Chancellor held that Nunnelly, under the

terms of his lease from Clifton, was liable to replace the building and he fixed the cost of replacing the building at $4,000, giving the complainants a decree for $4,000 with interest from the date of the expiration of the lease. The Chancellor filed the following memorandum which was made a part of the transcript:

"R. E. Hellen, as guardian of the complainants, Mrs. Kathleen Zuccarello and Mrs. Elva Foster Hellen, each of whom was then a minor, entered into a lease contract, with the defendant, J. T. Clifton.

"This lease contract was executed on the 14th day of August, 1911, and was for a term of eleven years, commencing on the 1st day of September, 1911, and continuing until the 1st day of September, 1922. The lot, which was the subject of the lease, was a vacant lot in the town of Ridgley, Lake county, Tennessee.

"This controversy is based upon the following provisions of the lease,—

" 'To have and to hold unto him, the said J. T. Clifton his heirs and assigns for the said term of eleven years. The consideration for the leasing is this, the said J. T. Clifton agrees and binds himself to improve said lot or tract of land, to erect at once a substantial brick building on the said lot, which building at the expiration of eleven years becomes the property of the said Elva and Kathleen Foster, in consideration of the free use of the lot for the said eleven years. It is also understood that the said J. T. Clifton will keep said building in good and sufficient repair for said term and will so leave the said brick building in good and sufficient repair at the expiration of the said lease. It is also fully understood as a part of the said consideration and a part of this contract that the said J. T. Clifton, his heirs and assigns will not permit but shall prevent all kinds of waste.

" 'It is further understood and made a part of this lease that the said Clifton, his heirs and assigns will deliver up the possession of said lot together with all buildings thereon or thereto belonging at the expiration of the said term, without notice to quit.'

"The lessee, Clifton, did immediately erect a substantial two story brick business house on the lot and continued in possession until the 14th day of February, 1913, when he assigned to the defendant, Walter S. Nunnelly.

"The defendant, Nunnelly, remained in possession by himself and sub-tenants until the building was destroyed by fire on October 6, 1917. The defendant, Nunnelly, had insured the building against loss by fire and after the fire he collected insurance, approximately $2800.

"On December 5, 1918, R. E. Hellen, guardian, filed suit in this court against the defendant, W. S. Nunnelly, seeking to have paid

to him as guardian, the proceeds of the fire insurance policy and to recover also damages because the house had not been rebuilt.

"There was a demurrer, which was sustained, and that suit was dismissed.

"It is now contended by the defendant that the decree sustaining the demurrer and dismissing that suit concludes the complainants in the present case.

"It is apparent that each and all of the grounds of demurrer that were sustained in the first cause were properly sustained.

"This suit was premature (second ground of demurrer). The bill did not exhibit the lease contract and contained no statement of fact showing that the covenants of Clifton (lessee) were such as would bind the assignee (Nunnelly), who was the sole defendant in that case (sixth ground of demurrer); for the same failure of recitals in the bill the seventh ground of demurrer was sustained and of course the guardian (complainant) had no right to fire insurance carried by Nunnelly for his own protection.

"There has never been an adjudication of this cause of action on the merits. The first suit was dismissed because premature and for obvious defects in the pleadings.

"There is no plea or any Statute of Limitations in this cause. It is true that the covenant to build the house did not run with the land. Spencer's case, 5 Coke, 16; Tyler, Landlord & Tenant (7 Ed.), par. 260; State ex rel. v. Martin, 14 Lea, 92.

"But that covenant was satisfied. Clifton did build a house.

"The covenant to repair did run with the land and bound Nunnelly as assignee whether named or not. Spencer's case, 5 Coke, 16; 1 Smith Leading cases, 116; Tyler, Landlord & Tenant (7 Ed.), par. 260; Shelby v. Hern, 6 Yerg., p. 512.

"Under a covenant to repair the lessee's liability is not confined to cases of ordinary and gradual decay, but extends to injuries done to the property by fire although accidental and even if the premises are entirely consumed, he is still bound to repair. Tyler, Landlord & Tenant (7 Ed.), par. 364; Addison on Contracts, 380; 24 Cyc. 1089.

"Hence I am of opinion that the defendant, Nunnelly, is liable for his failure to repair by replacing the building at the termination of the lease, and that the measure of damages is what sum it would have reasonably cost to replace the building on the 1st day of September, 1922, with interest. It is impossible to reconcile the conflicting proof in respect to the cost of replacement. Upon the whole proof, I am of the opinion that this should be fixed at the sum of $4,000 with interest, the cost should be paid by the defendants. Decree accordingly.

"Holmes, Chancellor."

The defendant excepted, prayed and perfected an appeal and has assigned six errors.

The first error is, that the Chancellor erred in overruling the demurrer.

Second, the Chancellor erred in holding that the decree in dismissing the bill filed by Hellen, Guardian, v. Nunnelly, does not conclude the complainants in the present case, and in holding that there has never been an adjudication of this cause on its merits.

Third, the Chancellor erred in holding that there is no plea of the Statute of Limitations in this cause. The Chancellor should have held that this suit is barred by limitation, and the defendants so pleaded.

Fourth, the Chancellor erred in stating and holding, as follows:

"The covenant to repair did run with the land and bound Nunnelly, as assignee, whether named or not.

"Under a covenant to repair, the lessee's liability is not confined to injuries done to the property by fire, although accidental, and even if the premises are entirely consumed, he is still bound to repair.

"Hence I am of opinion that the defendant Nunnelly is liable for his failure to repair by replacing the building at the termination of the lease; and that the measure of damages is what sum it would have reasonably cost to replace the building, on the first day of September, 1922, with interest."

And the Chancellor erred in fixing the cost of replacement at the sum of $4,000.

Fifth, the Chancellor erred in holding and decreeing that the defendant was liable to complainants for $4,000, with interest from September 1st, 1922, and in holding that defendant was liable for any amount.

The sixth assignment alleges that the Chancellor should have held contrary to what he did hold.

As to the first assignment, the first suit between Hellen, Guardian, and Nunnelly was not tried on its merits, it was dismissed because prematurely brought and the matters in controversy between the defendant and the complainants were not settled in that suit and the decree in that case is not res adjudicata in the instant case. The defendant attempted to plead the statute of limitations but the statute of limitations cannot avail the defendant because the bill in the instant case was filed within less than six years after the cause of action accrued or after September 1, 1922, and the suit was filed within less than three years after Kathleen Foster Zuccarello attained her majority.

The main question to be determined is whether the defendant is liable to complainants under the terms of the lease and if so for what amount.

Complainants insist that this contract of Clifton was directly assumed by defendant, Walter S. Nunnelly, under its written contract but even if he had not assumed it, that the law imposed upon him as a duty, as he could not take the benefits of the lease contract between Hellen, Guardian, and Clifton and not assume the burdens, and it is plainly admitted that he did take possession under his assignment and continued in possession with his sub-tenants until the house was destroyed by fire.

Complainants say that this was a covenant running with the land and that if the house was destroyed by fire, it was still the duty of defendant, Walter S. Nunnelly, to rebuild it and deliver it at the end of the lease contract, which was eleven years, expiring September 1, 1922; that this is made so on the face of the instrument, which bound J. T. Clifton and his heirs and assigns to deliver up the building, and property, with all buildings thereon or thereto belonging, and this is the contract assumed by Nunnelly, and which the Chancellor found in his written findings was binding on the assignee, Nunnelly.

It appears that at the time of the execution of the lease Clifton and Hellen, the guardian, understood that Clifton was to erect a two-story brick building on this lot, and that the two minors, the wards of Hellen, at the expiration of the lease, were to become owners of this building.

The defendant fully understood what Clifton had to do, and what Clifton had done. When the defendant took the lease from Clifton he stepped into Clifton's shoe and assumed Clifton's burdens, and assumed to replace the structure and deliver it at the end of the lease contract, and we are of the opinion that the Chancellor was not in error in so holding.

The law imposed on J. T. Clifton and his assignee, the defendant, an obligation, after the building was constructed to keep it in repair and deliver it at the end of the lease to complainants. The accidental destruction of the building, by fire, does not release the defendant.

On the question as to the amount of the decree we find from the photographs in the record that this was a very substantial two-story brick building. The complainant took the depositions of four contractors, who gave estimates as to the replacing of said building as it stood when destroyed. These four witnesses estimated the cost of replacing the building from $7,666.17 to $8,398.85, or an average of $8,018.13; the defendant's three witnesses estimated the cost of replacing the building from $3,310 55 to $3,520, or an average of $3,396.83, and all of the defendant's witnesses, in making their calculations, did so on the basis that the old walls standing could be used. We think that these witnesses were mistaken in

giving any value to these old walls, because these walls had been condemned by the City of Ridgely, and ordered taken down.

We think that the Chancellor was very conservative in fixing the costs of replacing the building at $4,000, and the defendant is not prejudiced by this finding. It results that all the assignments of error are overruled.

The decree of the Chancellor is, in all things, affirmed. The complainants will recover of the defendant the amount of judgment below, with interest thereon from the date of its rendition, and all the costs of the cause for which execution will issue against the defendants and his surety on the appeal bond.

Heiskell and Senter, JJ., concur.