STATE, BY J. W. CLARK, COMMISSIONER OF DEPARTMENT OF BUSINESS DEVELOPMENT, v. HARRY K. WOLKOFF AND ANOTHER, TRUSTEES OF HALPERN FAMILY TRUST, AND OTHERS, PARTNERS d.b.a. CUT PRICE SUPER MARKETS. MINNESOTA COUNCIL OF RETAIL TRADE ASSOCIATIONS, INTERVENOR.

85 N. W. (2d) 401.

October 4, 1957—No. 37,025.

*Miles Lord,* Attorney General, *Howard H. Gelb,* Special Attorney, for plaintiff-appellant.

*Loftsgaarden & Loftsgaarden,* for intervenor-appellant.

*Lipschultz, Altman, Geraghty & Mulally,* for respondents.

DELL, CHIEF JUSTICE.

In this action the state seeks to enjoin the defendants from offering and selling merchandise at less than cost as prohibited by law. Following a trial without a jury, the court found that while there were advertisements and sales at less than cost, there was not the necessary purpose or effect required by statute to constitute a violation of law and that, therefore, the defendants were entitled to judgment of dismissal on the merits. Plaintiff appeals from the order denying its alternative motion for amended findings and conclusions, or a new trial.[1]

When this action was instituted, defendants owned four retail grocery stores in different areas of St. Paul operating under the trade name of Cut Price Super Markets. Subsequently the defendants acquired a fifth store. In the latter part of 1955 defendants advertised and sold certain brands of ketchup, coffee, and sugar at less than their cost. Certain of their competitors testified that they were injured by such action. The evidence indicates that defendants operated in a highly competitive market—their competitors ranging from large national chains, operating as many as 50 stores in defendants' trade area, to one-store independents. One of defendants' stores has four large chain competitors within eight blocks; another has three within one mile; and another has five within a mile and a half. The evidence indicates that within a rather broad limitation set by actual cost the most important factor in setting the price of an item is what competitors are charging for such items. Such features as trading stamps, large color advertisements, and giveaway policies of competitors, as well as other obvious economic factors, also influenced the determination of what price to give

---

[1]Intervenor's position is substantially the same as plaintiff's and therefore will not be considered separately.

a particular item. Defendants' position appears to be that these advertisements and sales were made in good faith as necessary to actual business survival and were not made with the purpose or effect required by the statute. They introduced numerous advertisements of their competitors showing that they were charging the same or lower prices for these identical items. There is also undisputed evidence that defendants' relative position in their market had declined in the two years prior to these advertisements and sales while some of their competitors showed substantial increases during this same period.

■ Some preliminary consideration of the applicable law is necessary. Not every sale below cost is condemned under Minnesota law. Such an offer or sale must be accompanied by a certain purpose or have a certain effect. Twenty-nine other states have statutory prohibitions against sales below cost applicable to most industries and products.[2] All but one of these states[3] require that the offer or sale be made with some specific culpable purpose or have such an effect.[4] The absence of such a qualification would seem to render such a law unconstitutional.[5]

Under M. S. A. 325.04, only those offers or sales of goods at less than cost are declared illegal which are made:

"* * * for the purpose *or* with the effect of injuring competitors *and* destroying competition, * * *." (Italics supplied.)

It is to be noted that *both* injury to competitors *and* the destroying of

---

[2] 2 CCH, Trade Reg. Rep. par. 7101. Nine other states have similar prohibitions applicable to certain specific industries or products. Id. See, also, Louisiana Wholesale Distributors Assn. v. Rosenzweig, 214 La. 1, 6, 36 So. (2d) 403, 404.

[3] New Jersey has no requirement of purpose or effect. This statute has been declared unconstitutional because of this defect. State v. Packard-Bamberger & Co. Inc. 123 N. J. L. 180, 8 A. (2d) 291.

[4] 2 CCH, Trade Reg. Rep. par. 7151.

[5] See, State v. Packard-Bamberger & Co. Inc. 123 N. J. L. 180, 8 A. (2d) 291; see, also, Fairmont Creamery Co. v. Minnesota, 274 U. S. 1, 47 S. Ct. 506, 71 L. ed. 893; McElhone v. Geror, 207 Minn. 580, 292 N. W. 414; Commonwealth v. Zasloff, 137 Pa. Super. 96, 8 A. (2d) 801; Perkins v. King Soopers, 122 Colo. 263, 221 P. (2d) 343. But, see, May's Drug Stores v. State Tax Comm. 242 Iowa 319, 45 N. W. (2d) 245.

competition must be established as *either* the purpose *or* effect of the defendants' actions in order to find or sustain a violation. Apparently realizing the difficulty of enforcement of this type of law, the legislature provided some aid to the establishment of the dual purpose or effect necessary.[6] It provided that any sale by a retailer below an 8-percent markup, for the purpose or with the effect of injuring competitors *or* destroying competition, shall be prima facie evidence of a violation.[7] Thus, by showing such a sale with the purpose or effect of *either* injuring competitors *or* destroying competition, a plaintiff makes a prima facie showing of *both* elements. However, the establishment of a prima facie case is by no means conclusive.[8] If a court finds from competent and sufficient evidence that the challenged offer or sale was not, in fact, made with the requisite dual purpose nor had such effect, then it must find that there is no violation.[9]

■ We will first consider plaintiff's contention that the trial court erred in admitting the advertisements of the defendants' competitors, since this evidence constituted a major part of the defendants' case.[10]

---

[6]Such aid to the establishment of a violation is not uncommon. See, e. g., Rev. Code of Wash. § 19.88.140 (intent); Calif. Bus. & Prof. Code, §§ 17041, 17026 (cost).

[7]M. S. A. 325.52.

[8]See, Blumberg v. Palm, 238 Minn. 249, 253, 56 N. W. (2d) 412, 415; Topinka v. Minnesota Mutual Life Ins. Co. 189 Minn. 75, 248 N. W. 660, 95 A. L. R. 739; State v. Twentieth Century Market, 236 Wis. 215, 221, 294 N. W. 873, 876.

[9]See, Opinion Attorney General, No. 681-A, November 8, 1946; Opinions Attorney General, No. 417-E, November 24, 1947, February 4, 1949, March 23, 1949, and July 5, 1949.

[10]Plaintiff actually assigns as error certain determinations allegedly made in the trial court's memorandum. While a memorandum may be used to explain ambiguous or vague findings, it is extremely doubtful if any error in a memorandum would warrant a new trial or reversal. Since a correct decision will not be reversed because it was based on the wrong reasoning (1 Dunnell, Dig. [3 ed.] § 421), the opinion of the trial judge, as expressed in a memorandum opinion, may be disregarded. However, since plaintiff's argument under this assignment appears to be directed to the alleged erroneous admission of certain advertisements, we will consider the assignment of error as so specified.

These advertisements were published during a period from approximately six months prior to defendants' alleged violations until about one month after the advertisements and sales challenged in this action. Certain of these advertisements were introduced to show the high degree of competition in the St. Paul grocery market. They were used to demonstrate the competitive influence of large advertisements, gift stamps, and other giveaway features employed by defendants' competitors. The competitive activity of the defendants' trade area is a legitimate area of inquiry in actions of this kind and insofar as they were introduced for this purpose, we cannot say that the trial court erred in admitting such evidence.

Plaintiff contends more specifically, however, that insofar as these advertisements showed that the defendants' competitiors were charging the same or lower prices on identical items, they were inadmissible since there was no preliminary showing as required by § 325.06(4). This section states that the provisions of § 325.04 shall not apply to sales made:

"In an endeavor made in good faith to meet the legal prices of a competitor selling the same commodity, articles, goods, wares, or merchandise in the same locality or trade area."

We are of the opinion that the record furnishes a sufficient evidentiary basis to warrant the trial court in concluding that these preliminary requirements were satisfied.

There is obviously sufficient evidence to justify a finding that these competitiors were in the same locality or trade area. The principal area of dispute relates rather to the issue of the "legality" of these competitors' prices. Plaintiff takes the position that § 325.06(4) requires that the defendant must establish the absolute legality of these competitors' prices at his peril. We do not agree. Such an interpretation would ignore the qualification of "an endeavor made in good faith," an all-important phrase in this exemption. We are of the opinion that an examination of the history of this type of provision and a consideration of the practicalities involved necessitate a less strict interpretation.

An exemption such as this is common in unfair trade acts. Eighteen

states have provisions similar to Minnesota, i. e., exempting sales below cost made in good faith to meet the *legal* prices of a competitor.[11] Eight states require only good-faith meeting of competition without reference to the legality of his price.[12] Certain acts originally were absolute in requiring that the competitor's price was a "legal" price, without regard to the good faith of the defendant. Such an absolute requirement has been termed invalid.

As stated in Commonwealth v. Zasloff, 338 Pa. 457, 465, 13 A. (2d) 67, 71, 128 A. L. R. 1120:

"* * * and how could merchant know whether a selling price which he proposed to fix was legal because it met 'the legal price of a competitor for merchandise of the same grade, quantity and quality'? How could such 'legal price of a competitor' be ascertained without examining the competitor's books in order to determine whether *his* price was legal? The standard set by the act to differentiate criminal from legitimate sales is so vague, indefinite and incapable of practical application that this in itself would make its enforcement a violation of the due process clause: * * *."

In State v. Packard-Bamberger & Co. Inc. 123 N. J. L. 180, 185, 188, 8 A. (2d) 291, 294, 295, the New Jersey Supreme Court made this comment on such an absolute provision:

"* * * How a person is to determine the legality of the price of a

---

[11]Ark. Stat. 1947 Ann. § 70-306(d); Calif. Bus. & Prof. Code, § 17050(d); Colo. Rev. Stat. 1953, § 55-2-6(4); Ky. Rev. Stat. § 365.040(4); La. Rev. Stat. 1950, 51:426(7); Rev. Stat. of Maine 1954, c. 184, § 3(VIII); Rev. Codes of Mont. 1947, § 51-107(d); N. H. Rev. Stat. Ann. 1955, 358:3(h); N. J. Stat. Ann. (Perm. ed.) § 56:4-14(e); N. Dak. Rev. Code of 1943, § 51-1007(7); Okla. Stat. Ann. (Perm. ed.) Title 15, § 598.7; Ore. Rev. Stat. § 646.120(4); Tenn. Code Ann. § 69-304(h); Utah Code Ann. 1953, § 13-5-12(d); Code of Va. 1950, § 59-19(7); Rev. Code of Wash. § 19.88.100(4); W. Va. Code of 1955, § 4678(8h)(d); Wyo. Comp. Stat. 1945, § 39-410(D).

[12]Ariz. Rev. Stat. § 44-1463(7); Idaho Code, § 48-407(d); Gen. Stat. of Kan. 1949, § 50-405(e); Ann. Code of Md. art. 83, § 114(h); Ann. Laws of Mass. c. 93, § 14G(h); Rev. Stat. Neb. 1943, § 59-1206(7); Purdon's Pa. Stat. Ann. (Perm. ed.) Title 73, § 216(g); Wis. Stat. 1955, § 100.30(6)(g).

competitor is not declared, and the impracticability, if not the impossibility of determining the 'legality' of a competitor's price is obvious.

\* \* \* \* \*

"\* \* \* A person might believe he was complying with the provision of this act in all respects, and find himself guilty of its violation because \* \* \* he met the price of a competitor, believing such price to be a lawful one, when it was not \* \* \*."

Thus, in response to arguments similar to plaintiff's here, the qualification of "good faith" has been held to obviate any absolute requirement that the defendant must establish the legality of the competitor's prices. In People v. Pay Less Drug Store, 25 Cal. (2d) 108, 117, 153 P. (2d) 9, 14, the California Supreme Court pointed out:

"\* \* \* The requirement is not absolute. It is merely that the defendants shall have endeavored 'in good faith' to meet the legal prices of a competitor. A similar provision was upheld in State v. Sears, 4 Wn. 2d 200 [103 P. 2d 337, 345], the court saying 'that if a merchant in good faith reduces his prices to meet those of a competitor, who he in good faith believes has a legal price, he will not be violating either the intent or the wording of the act.' The provision therefore is not like that involved in Commonwealth v. Zasloff, \* \* \* also, State v. Packard-Bamberger & Co., \* \* \* holding invalid a provision which exempted the merchant if the price was made 'to meet the legal price of a competitor' as an absolute requirement without according him the opportunity of showing his good faith."

In McIntire v. Brofsky, 95 N. H. 174, 177, 59 A. (2d) 471, 474, the New Hampshire Supreme Court stated concisely:

"One of the exceptions to the act is 'where the price of merchandise is made in good faith to meet legal competition.' \* \* \* If this required the retailer to examine his competitor's books to ascertain whether the competition was legal, it would be of doubtful validity. \* \* \* All that is required of the retailer, however, is an endeavor 'in good faith' to meet the legal prices of his competitor."

We are of the opinion that such an interpretation is the practical and

correct one. If a merchant in good faith sets the price of an article on the basis of a competitor's price, which price he in good faith believes to be a legal one, there is no violation.

In the case now before us we cannot say that the court erred in determining that the defendants acted in good faith in believing they were meeting legal prices. The inferences are conflicting. Although we may have reached a different determination on a de novo consideration, there is sufficient evidence in the record to permit the trial court to infer the good faith of the defendants, including direct testimony of such "good faith." The very fact that a competitor advertises a certain price on a given article over a long period of time without being challenged, and apparently without adverse economic effects, may warrant a merchant in assuming that such price is a legal one.

■ Furthermore, plaintiff's entire argument appears to be based on the assumption that this section prevents the introduction of competitor's prices *in all instances, for all purposes,* unless there is the required foundation set forth in this section. Again we cannot agree. Even if such evidence were inadmissible as a defense under § 325.06(4) insofar as it relates to defendant's meeting of competitor's prices, this does not render its admission fatal where it may be properly admitted for another purpose.

From a review of the record, it appears that the defendants' theory in introducing this evidence was much broader than merely supporting a claim that they were meeting competitor's prices. As previously mentioned, part of this evidence was directed to showing the high competitive features of defendants' trade area. The defense also contended that it was customary to set prices on the basis of what competitors were charging for the same items, and that their "purpose" in setting these prices was not injury to competitors or destruction of competition but rather actual business survival as well as a type of promotion and advertising to counteract the giveaway and trading-stamp schemes of certain competitors. These contentions, if believed, would fairly negate any claim that the prices were established to injure competitors or destroy competition. This evidence is reasonably corroborative of such contentions. It is doubtful if such a "purpose" is merely "meeting the prices" of a competitor *within the meaning of*

§ 325.06(4) so as to prevent the introduction of such evidence without the preliminary foundation required by that section.

Furthermore, it is apparent that the defendants also introduced this evidence to show that their prices did not have the *effect* of injuring competitors or destroying competition. Plaintiff alleged in the complaint that the defendants' sales under cost were made for the purpose *or* had the effect of injuring competitors and destroying competition. Proof of either "purpose" or "effect" would warrant a finding of violation. Thus, defendants were entitled to introduce evidence tending to show that their acts did not have the effect claimed. The fact that competitors were charging the same or lower prices for a reasonable time before and after the alleged violations was valid evidence that the defendants' prices did not, and even could not, have the effect of injuring such competitors or destroying competition in the market involved.

Plaintiff's objection to the admission of this evidence was general and was not accompanied by any request for a qualification or restriction of the use of such evidence. Evidence lawfully admissible for one purpose cannot be excluded merely because it may be used for another purpose. Upon proper request the court should limit its application, but where the objection is to the whole and not accompanied by a request for restriction of its use, the trial court commits no prejudicial error in admitting the evidence.[13]

Plaintiff also contends that these advertisements were too remote in time from the date of the alleged violations charged in this action. We are of the opinion that they are not so remote as to warrant this court's interference.

The admission and exclusion of evidence rests, to a large degree, in the discretion of the trial court.[14] We cannot say that in the matter now before us the trial court abused such discretion.

■ Plaintiff next contends that the trial court erred in finding that the defendants' advertisements and sales were not in violation of law.

---

[13]State v. DeZeler, 230 Minn. 39, 41 N. W. (2d) 313, 15 A. L. R. (2d) 1137; see, Van Brunt v. Greaves, 32 Minn. 68, 19 N. W. 345.

[14]Klingman v. Loew's Inc. 209 Minn. 449, 296 N. W. 528; see, 19 Dunnell, Dig. (3 ed.) § 9714.

The trial court found generally in accordance with the statutory language that the advertisements and sales were not made for the purpose or with the effect of injuring competitors and destroying competition. In its memorandum, however, the court indicated that while it felt that the plaintiff did make a prima facie case because of the evidence of "slight" injury to some independent competitors, in its opinion it was clear that the acts of the defendants were not done with the purpose or effect required under the law. Since, as previously discussed, both injury to competitors and destroying competition are necessary to establish a violation, the absence of either a purpose or effect of destroying competition will warrant a judgment for the defendants without regard to any injury to competitors. We are of the opinion that the record before us amply supports the trial court's position.

As far as the *purpose* of the defendants is concerned, we have the testimony of one of the defendants, a managing partner whose duty it was to compute and determine the selling price for the various grocery items sold by Cut Price. His testimony is replete with legitimate reasons why the challenged prices were established—reasons other than an intention to injure competitors or destroy competition. This witness testified that in setting the selling price on any item, the major consideration was the prices advertised by competitors on these same items and that was one reason for such prices. He further indicated that these prices were established to counteract the promotional and advertising effect of giveaway and trading-stamp schemes of competitors and to regain business which the defendants had recently lost. He testified that there was as much as a 20-percent decline in the number of families that shopped in their markets in the three years preceding this action and offered the results of an independent survey to support such contentions. He attributed defendants' declining position to the low prices set by competitors plus the development by their competitors of the use of trading stamps and other "giveaways" as stimulated by extensive advertising campaigns. He testified that the only form of competition open to the defendants and the independents were low prices. This witness identified the numerous advertisements, both before and after the date of the alleged violation charged in this action, showing the defendants' competitors were advertising

the same or lower prices for these identical items.

Purpose or intent are seldom, if ever, easy elements to prove. They necessarily involve subjective determination. They may, of course, be inferred from the objective conduct of the person concerned. In this case there is direct testimony of the defendants' "good faith" from the person responsible for setting prices for the defendants'. stores. There is also abundant corroborative evidence that his sole motive was defensive in the face of competitors' actions. The evidence is sufficient to support a finding that the advertisements and sales were not made for the purpose of either injuring competitors or destroying competition.[15]

We must then consider the *effect* of the defendants' advertisements and sales. While the trial court indicated that it did feel that the defendants' actions had the effect of injuring some competitors "to a slight degree," it emphasized that "It is also clear that these sales did not destroy or even diminish competition," and "had no effect whatever in the direction of destroying competition."

The phrase "destroying competition" or its equivalent is a part of the unfair-trade statutes of 15 states in addition to Minnesota.[16] Other states use the phraseology "substantially lessening competition" or its equivalent,[17] an obviously more workable test.

---

[15]See, Ellis v. Dallas, 113 Cal. App. (2d) 234, 248 P. (2d) 63.

[16]Ark. Stat. 1947 Ann. § 70-303; Calif. Bus. & Prof. Code, § 17043; Colo. Rev. Stat. 1953, § 55-2-3; Gen. Stat. of Conn. § 6716; Ky. Rev. Stat. § 365.030; Rev. Stat. of Maine 1954, c. 184, § 2; Ann. Code of Md. art. 83, § 113; Ann. Laws of Mass. c. 93, § 14F; Rev. Codes of Mont. 1947, § 51-103; N. H. Rev. Stat. Ann. 1955, 358:2; Ore. Rev. Stat. § 646.100(1)(a); R. I. Acts and Resolves of 1939, c. 671, § 2; Rev. Code of Wash. § 19.88.040; W. Va. Code of 1955, § 4678(8b); Wyo. Comp. Stat. 1945, § 39-407.

[17]Ariz. Rev. Stat. § 44-1464; Idaho Code, § 48-404; Gen. Stat. of Kan. 1949, § 50-402; La. Rev. Stat. 1950, 51:422; Rev. Stat. Neb. 1943, § 59-1203; N. Dak. Rev. Code of 1943, § 51-1003; Okla. Stat. Ann. (Perm. ed.) Title 15, § 598.3; Purdon's Pa. Stat. Ann. (Perm. ed.) Title 73, § 213; Tenn. Code Ann. § 69-303; Utah Code Ann. 1953, § 13-5-7; Code of Va. 1950, § 59-13. Code of Laws of S. C. 1952, § 66-65, speaks of "driving out competition * * *." Wis. Stat. 1955, § 100.30(4), speaks only of injuring a competitor. N. J. Stat. Ann. (Perm. ed.) § 56:4-8, requires no purpose or effect; see footnote 3, *supra.*

Although "destroying competition" is a common test in unfair-trade laws, it appears to have had no specific judicial interpretation.[18] Perhaps this is due to the unstrategic position of this phrase in the laws of most states. Nine of the fifteen states using this phrase provide a less absolute, alternative basis of establishing a violation.[19] The other six speak solely of a *purpose or intent* to destroy competition with no reference to effect.[20] Proving such an intention is obviously something quite different—something less—than proving that the defendants' acts had the *effect* of destroying competition. Thus, among the states which do require or permit the establishment of a violation by proof of some "effect," only Minnesota requires the plaintiff to prove the effect of "destroying competition."

Webster defines "effect" and "destroy" as follows:

Effect: "That which is produced by an agent or cause; * * * result; outcome; * * * consequence * * *."

Destroy: "To undo or unbuild; to ruin the structure, organic existence, or condition of; * * * to demolish; * * *. To ruin completely or to injure or mutilate beyond possibility of use, * * *. To bring to naught by putting out of existence; * * *. To annihilate; to cause to vanish; to abolish; * * * to nullify; * * *."[21]

In short, the obvious literal requirement to satisfy this test might be

---

[18]Compare, under milk licensing law, where "destructive competition" was defined as that which would "tend not only to damage but to destroy competition." Matter of Eisenstein v. Du Mond, 268 App. Div. 320, 323, 51 N. Y. S. (2d) 811, 814.

[19]The following states offer injury to competitors as an alternative basis. Calif. Bus. & Prof. Code, § 17043; Gen. Stat. of Conn. § 6716; Rev. Stat. of Maine 1954, c. 184, § 2; Ann. Code of Md. art. 83, § 113; Ann. Laws of Mass. c. 93, § 14F; N. H. Rev. Stat. Ann. 1955, 358:2; R. I. Acts and Resolves of 1939, c. 671, § 2. Ore. Rev. Stat. §ʼ 646.100(1)(a), condemns actions which may lessen, injure, destroy, prevent, hinder, *or* suppress the competition of competitors. Rev. Code of Wash. § 19.88.040, speaks of offenses which destroy *or* tend to destroy competition.

[20]Ark. Stat. 1947 Ann. § 70-303; Colo. Rev. Stat. 1953, § 55-2-3; Ky. Rev. Stat. § 365.030; Rev. Codes of Mont. 1947, § 51-103; W. Va. Code of 1955, § 4678(8b); Wyo. Comp. Stat. 1945, § 39-407.

[21]Webster's New International Dictionary (2 ed.) (1947).

held to require the complete elimination of all effective competition.[22] A strong argument could be made for such an interpretation based on the availability of obvious alternative words such as "damage" to indicate a lesser condition. However, in considering the practicalities of the evil sought to be remedied and the apparent legislative intent, such a requirement would approach absurdity,[23] for seldom, if ever, is *all* competition eliminated by the most severe price cutting. Nor should the administrative body responsible for enforcement of such laws be required to wait until such a condition exists before attempting some legal restraint.

It is our duty to construe and interpret a statute so as to give it practical meaning and effect within the legislative intent.[24] However, until a proper factual case is presented which requires a clear determination and offers a practical situation in which all the conflicting problems and considerations of the area involved are apparent, a court should restrain from theorizing. This should be particularly true in the field of economic regulation. The eventual goal of any interpretation must be viewed in the practical situation existing in the field to be regulated.[25]

In the matter now before us, it does not appear necessary or proper to establish a rigid standard or definition of the phrase "effect of * * * destroying competition." Certainly the phrase requires, at the very least, some substantial damage to the competitive atmosphere of the defendants' trade area or to a competitor. Here there is no showing of substantial damage to even one competitor, much less any effect whatsoever on the competitive atmosphere of the St. Paul retail-grocery market. A careful review of the evidence leaves serious doubt that plaintiff's evidence could support a finding of the destroying of competition in the broadest possible meaning of that phrase, if the trial court had made such a determination. The evidence certainly affords ample support for the finding that the defendants' actions did

---

[22]Cf. Matter of Eisenstein v. Du Mond, 268 App. Div. 320, 323, 51 N. Y. S. (2d) 811, 814.

[23]See, 17 Dunnell, Dig. (3 ed.) § 8947.

[24]See, 82 C. J. S., Statutes, § 312; 17 Dunnell, Dig. (3 ed.) § 8937, et seq.

[25]See, 17 Dunnell, Dig. (3 ed.) § 8940.

not have the effect of destroying competition. Whether the actions of the defendants were with the requisite dual purpose or had such effect was a question of fact to be resolved by the trier of fact.[26] We emphasize what we have repeatedly said, that we may only interfere with the findings of the lower court where the evidence taken as a whole furnishes no substantial support for such findings. If the evidence fairly tends to support the findings—if reasonable persons might draw different conclusions from the evidence—then the findings should not be disturbed.[27]

Plaintiff's witnesses, independent competitors of the defendants, testified to extremely vague injuries, resorting to obvious speculation not only as to defendants' actions being the cause of any loss, but the very fact of any loss at all. The only definite economic estimate of loss was by one witness and amounted to $4. The defense successfully brought out many other factors which could have been responsible for the supposed losses. On the other hand, there was ample evidence introduced by the defendants to show that the same competitive atmosphere apparently prevailed some time before as well as after the alleged violations. As previously pointed out, there was evidence that the defendants' competitors were advertising the same or lower prices on these same products as much as 5 months before the defendants' advertisements and for some time thereafter. It also appears that during the 2 years preceding these alleged violations the defendants' relative position in the market had decreased almost 21 percent while certain of their competitors had increased their position as much as 41 percent and 46 percent. While this evidence would not necessarily prevent the defendants' actions from being illegal by, in fact, destroying competition and injuring competitors at the time of such practices, it does offer persuasive support for the trial court's conclusions. A consideration of the evidence in its entirety indicates ample support for the disputed finding.

■ The trial court found that the defendants operated a chain of grocery stores in St. Paul "in competition with many other chain

---

[26]See, Mering v. Yolo Grocery & Meat Market (Cal.) 127 P. (2d) 985; State v. Twentieth Century Market, 236 Wis. 215, 221, 294 N. W. 873, 876.

[27]See, 1 Dunnell, Dig. (3 ed.) § 411.

grocery companies, many of whose operations were larger than those of the defendant." The plaintiff contends that the court erred in this finding by failing to state that defendants were also in competition with grocers smaller than the defendants. Plaintiff only makes token reference to this alleged error, citing no authority in support of its position that such an omission constitutes reversible error. The truth of the finding is undisputed. We know of no rule requiring the trial court to state every fact. Obviously the court was attempting to merely indicate that the defendants were not the "giant" of their trade area, a fact amply supported by the evidence. We fail to see how the fact that it was also not the smallest would change the decision. Only the ultimate issuable facts must be found.[28] Where the decisive facts, as found by the trial court, are sustained by the evidence, it is not necessary to specifically discuss proposed findings of fact which would not change the result.[29]

■ Finally plaintiff alleges error in the trial court's refusal to admit in evidence the deposition of one of the defendants, a managing partner of the stores and the principal witness for the defense. It is apparent from the record that extensive latitude was permitted in the cross-examination of this witness, including the use of part of the deposition for attempted impeachment. The record is not clear as to the exact purpose for which the plaintiff sought to introduce the deposition. It came after thorough and extensive cross-examination of this witness and was offered so that "perhaps the matter can be simplified * * *." Considerable cross-examination followed and finally counsel for plaintiff stated "That is all I have of this witness." No further particular parts of the deposition were offered for impeachment or otherwise. Plaintiff does not set forth the allegedly damaging evidence it now claims is contained in the deposition and no offer of proof appears in the record. A court cannot assume the materiality of evidence not included in the record nor in any way disclosed, and in the absence of any showing of the nature and substance of such evidence, this court cannot determine whether it was erroneous-

[28]19 Dunnell, Dig. (3 ed.) § 9851.
[29]Johnson v. Grady, 187 Minn. 104, 244 N. W. 409.

ly excluded or if plaintiff was prejudiced by such exclusion.[30]

As we understand it, plaintiff's position is that Rule 26.04(2) of Rules of Civil Procedure gives him the absolute right to introduce a party's or managing agent's deposition. This rule states: "The deposition of a party or * * * managing agent * * * may be used by an adverse party for any purpose." Plaintiff omits reference to the preceding qualifying language of the main body of Rule 26.04, that a deposition may be used "so far as admissible under the rules of evidence, * * *." We do not read into this rule a mandatory requirement that a court must admit the deposition of an adverse party regardless of trial circumstances.[31] As stated in Arnstein v. Porter (2 Cir.) 154 F. (2d) 464, 470:

"* * * As we have said, 'a deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand' * * *"

and at footnote 11:

"* * * Of course, under the Rules, the deposition of an adverse party may be used 'for any purpose,' but it is not a compulsory substitute for his examination in open court."

In view of the full latitude afforded plaintiff in cross-examination of the witness, and the unrestricted use of the deposition, short of its blanket admission, and since the plaintiff has not set forth the allegedly damaging evidence contained in the deposition nor protected itself by a proper offer of proof at the trial, we find no error in the court's exclusion of the deposition.

Affirmed.

---

[30]See, Gutmann v. Klimek, 116 Minn. 110, 133 N. W. 475.

[31]See, United States v. United Shoe Machinery Corp. (D. Mass.) 93 F. Supp. 190.