EVCO CORPORATION, Petitioner,

v.

Richard ROSS and Beryl Ross,
Respondents.

Supreme Court of Tennessee.

Sept. 15, 1975.

Robert H. Crawford, Chattanooga, for petitioner.

Charles W. Lusk, Jr., Hall, Haynes, Lusk & Foster, Chattanooga, for respondents.

## OPINION

HARBISON, Justice.

This case involves the construction and interpretation of a lease agreement entered into on April 15, 1972 between the respondents as lessors, and petitioner as lessee.

Although the property rented is valuable commercial property, the lease agreement is very brief. The term of the lease is from April 15, 1972 through April 14, 1977, and the premises covered are located at 5621 Brainerd Road, in Chattanooga, on which there was situated a restaurant building, or lounge, known as "The Light Fantastic".

The lessee agreed to pay rental of $1300 per month, beginning on April 15, 1972, and the lessor was authorized to take possession of the premises without legal action in the event there was a default for as much as 30 days in the rental payments. The lease provided that the lessee should have full use of the furniture and fixtures on the premises, and should return the same at expiration of the lease in as good condition as when first accepted, with the exception of wear and tear.

The lease then contained the following provisions:

"It is understood and agreed that the lessee shall be responsible for the minor repairs that may become necessary to the building structure during the term of the lease, and if said lessee desires to make any addition to the said building structure or to otherwise alter, modify or change same, consent of the lessee [sic] shall first be obtained.

"Lessee shall carry liability insurance upon the premises sufficient to save the lessor harmless for any liability that might arise in the use of the said premises.

"The lessor shall be responsible for all major repairs that may become necessary to the building structure during the term

of the lease and should same occur lessor shall make necessary repairs within a reasonable period of time following the occurance [sic].

"The lessor shall carry fire insurance upon the building structure for any damage thereto by fire.

"The lessee shall pay any increase in property taxes being assessed during the term of the lease.

"It is understood and agreed that the lessee shall return the premises back to the lessor at the expiration of the lease, in as good condition as when premises first occupied, wear and tear excepted from ordinary use."

On April 19, 1973, a fire occurred on the premises, the origin of the fire not being disclosed in the record. The building and contents were very substantially damaged, but the only issue before us concerns the building structure, and not its contents. Both the Chancellor and the Court of Appeals in the present litigation have concurred in finding that the damage to the building was so severe as to amount to total destruction, from a practical standpoint. There being substantial evidence to support this finding, this Court is bound by the same and that question is not open to further review here. T.C.A. § 27–113.

This suit was instituted by the lessee to enforce the covenants of the lease, it being alleged that portions of the building could still be used, particularly the outside walls, and that Mr. Ross, one of the lessors, had requested the lessee to procure plans for the rebuilding, stating that thereupon the lessors would rebuild. The complaint alleges, however, that thereafter the lessors stated that they had received proposals for other and more profitable uses of the property, and that they had declined to restore the building which had burned. The suit sought, in effect, specific performance of an alleged duty on the part of the lessors to rebuild, together with damages for delay and abatement of the monthly rental during the period of repairs. There were also

prayers for attorneys fees and for general relief.

The lessors admitted the terms of the lease, but alleged in their answer that the building had been totally destroyed by fire. They alleged that there was no duty on their part to rebuild under the terms and provisions of the lease, but the lessors took the position that the lessee continued to be liable for payment of rent and fulfillment of the lease terms unless or until the lease was cancelled or terminated.

Both parties moved for summary judgment. The Chancellor concluded that there were disputed factual issues, but instead of overruling both motions as required under Rule 56 of the Tennessee Rules of Civil Procedure, he ordered a reference to the Clerk and Master for determination of certain issues of fact. This was done without objection by either party insofar as the record discloses. On the reference, the Clerk and Master was directed to determine the nature and extent of the damage to the building, cost of repairs, etc., and the parties took extensive proof on these issues before the Master. The Master thereupon returned a report to the Chancellor, finding in effect that the building was totally destroyed by fire, and that the cost to rebuild would be essentially the same whether the existing structural walls were used or demolished in the rebuilding. Exceptions to this report were filed, and these were overruled by the Chancellor. The Chancellor then filed a memorandum opinion, to the effect that there was no duty on the part of the lessors, under the terms of the lease in question, to rebuild the building when there was a total loss, as distinguished from a partial loss. He accordingly denied relief to the lessee, but further found that it was the intention of the parties that the lease would terminate upon total destruction of the building. He excused the lessee from paying rent from and after the date of the filing of this suit, which was some two months after the date of the fire, and directed a refund of all rentals paid subsequent to the filing date.

The Court of Appeals affirmed the holding of the Chancellor in part, finding that the covenant of the lessors in this case to make major repairs and to insure against any damage to the building by fire was only a limited or special covenant, and not a general one, and that there was no duty to rebuild in the event of total destruction. The Court of Appeals held, however, that since the lessee had not availed itself of its statutory right to terminate the lease pursuant to T.C.A. §§ 64–702, 703, the lease was still in force and effect, and the lessee was obligated to continue making the prescribed rental payments.

 The lessee filed a petition for certiorari with this Court, which was granted. We have examined the authorities cited by the Court of Appeals, and we are in agreement with the general principles of law stated therein, to the effect that a special or limited covenant to make repairs on the part of the lessor does not obligate the lessor to rebuild the structure in the event of a total loss or destruction. A general covenant to repair usually is deemed to include cases of total as well as partial destruction. See Annot., 38 A.L.R.2d 682, 703 et seq. (1954).

In the present case, however, we are not satisfied with the conclusions of either of the courts below to the effect that the covenant in this case was special or limited. It was an unconditional covenant to make all major repairs to the premises during the term of the lease coupled with an agreement on the part of the lessors to procure fire insurance upon the building "for any damage thereto by fire."

We need not consider in this case whether the lessors would be obligated to rebuild the structure had it been totally destroyed by flood, collision or some cause other than fire. The covenant to make "all major repairs that may become necessary to the building structure during the term of the lease" is, to say the least, not expressed in narrow or restricted language. Most of the cases in which covenants have been deemed

to be special or limited have been cases where the lessor agreed to repair or maintain the roof, outside walls, or some other specific portion of the building.[1] In the present case, however, there is not only the broad agreement to make all major repairs that may become necessary during the term of the lease, but there is a special and specific undertaking on the part of the lessors to carry fire insurance upon the building "for *any* damage" to the building which might result from fire.

Since there was a fire loss in this case, we are convinced that the provisions of this lease are such that the loss must be borne by the lessors. The Court of Appeals undertook to distinguish "damage" by fire from "destruction" by fire, citing in support of its opinion a case involving competition among distributors of milk, which is not determinative, in our opinion, of the issues involved in this case.[2] We conceive that such a distinction, in the context of the present case, would be highly technical and contrary to the ordinary usage and meaning of words.

■■■ As previously mentioned, the lease involved in this case is quite brief and certainly does not present a model of draftsmanship for commercial leasing. Nevertheless, the words contained therein must be given their ordinary and customary usage, and not a strained or unnatural interpretation. We recognize that ordinarily, as between the landlord and tenant, the lessor has no obligation to make repairs upon leased premises. His obligation to do so, in general, rests upon contract. Had the lessors in the present case agreed to maintain only the roof, outside walls, or other limited portions of the building, or had the fire insurance clause given the lessor an option not to rebuild, we might well reach a differ-

ent conclusion. We cannot, however, read the language of this lease as containing anything other than a general covenant on the part of the lessors, insofar as fire losses were concerned, and that is the kind of loss which was experienced.

In the case of *Zuccarello v. Clifton,* 12 Tenn.App. 286 (1930), a tenant was held to have an obligation to rebuild a leased building which was destroyed by fire during the term of the lease. In that case the lessee had agreed to erect the structure and to "keep the building in good and sufficient repair for the said term . . . ." The tenant had further agreed that it would "leave the said brick building in good and sufficient repair at the expiration of his said lease."

The Court of Appeals held that these covenants were sufficient to cast upon the tenant the duty of rebuilding and replacing the structure.

After the decision in that case, the General Assembly provided that when any building which is leased or occupied is destroyed or so injured by the elements or any other cause as to be untenantable and unfit for occupancy, and where there is no express written agreement to the contrary, the lessee or occupant is entitled to surrender possession of the premises, if the destruction or injury occurred without his fault. The tenant is relieved from the payment of rent from and after the date of the surrender, and a covenant or promise to leave or restore the premises in good repair does not operate to cast upon the tenant the duty of paying for the building damage, unless this was caused by his neglect or fault, or unless he has expressly stipulated in writing to be so bound. T.C.A. § 64-702, 703.

■■■ Upon the record before us, therefore, there is no question but that upon the

---

1. Thus in the case of *Miller v. Miller,* 217 Miss. 650, 64 So.2d 739 (1953), relied upon by the Court of Appeals, the covenant was *to maintain* "the roof, foundation and outside surfaces (except painting)." And in the case of *Arbenz v. Exley,* 52 W.Va. 476, 44 S.E. 149, 152 (1903), also cited below, the

Court expressly stated, "This lease contained no general covenant to rebuild, but only the limited one to keep the roof in order."

2. *Application of Eisenstein, et al.,* 268 App. Div. 320, 51 N.Y.S.2d 811 (1944).

total destruction of the building by fire, the lessee had a statutory right to surrender the premises and be relieved of any further rental payments. This, however, is an optional remedy of a tenant, and is not compulsory. The existence of such a statutory right on the part of a tenant does not, in and of itself, relieve the lessor of a covenant to rebuild or replace.

■ We recognize, of course, that the lessors in this case could have insured the building against fire damage wholly apart from the lease provisions. They had an insurable interest in the property, which they could have protected by appropriate coverage. In this case, however, they expressly covenanted with the tenant that they would carry fire insurance for any damage to the building during the term of the lease, and simultaneously agreed to make all major repairs. We conclude that under these circumstances the legal effect of these covenants was to make the lessors responsible for proper restoration of the premises after a fire loss,[3] there being no other provisions in the lease to the contrary.

The parties clearly contemplated that the lessee would carry liability insurance during the term of the lease, and it seems irrefutable that if there had been a liability claim made against the lessors, they would have been entitled to indemnification by the lessee, had the lessee failed to procure adequate liability insurance coverage. By the same token, the parties contemplated that the lessors would carry fire insurance "for any damage" to the building during the term of the lease, and if the lessors failed to insure fully against such damage they must bear the consequences.

As previously stated, the parties have taken extensive proof in this case upon the issue of whether the building was totally or partially destroyed in the fire, the lessors having recognized that they would be responsible for restoration had the damage been only partial. For the reasons stated above, we do not regard this as the determinative issue, because we regard the terms of the lease as imposing a general obligation upon the lessors to assume responsibility for fire loss during the term of the lease. While the tenant had the statutory right to terminate upon such fire loss, it was not obligated to do so, and we do not believe it was the intention of the parties that there should be an automatic cancellation or termination, in view of the obligation of the lessors to make all major repairs and to do so within a reasonable period of time following a loss.

In our opinion, the loss in this case must fall upon the lessors, and we hold that they have breached the covenants of the lease by failing to restore the promises. We will not here attempt to determine appropriate relief in the case. The matter has now been more than two years in litigation. In view of the short term remaining unexpired on the lease, it may now be deemed inequitable or inappropriate to require the lessors to restore the building, and we leave to the Chancellor complete discretion in fashioning appropriate relief. See generally Annot., 38 A.L.R.2d 682, 717 (1954).

■ In concluding this opinion we feel it proper to comment upon the procedure which was followed in the trial of this case. Summary judgment proceedings in this state were authorized for the first time by Rule 56 of the Tennessee Rules of Civil Procedure. This new procedure was designed to fill a vacancy or void which had existed in prior practice and to provide a procedural step which had heretofore not existed. Under previous practice, in both the circuit and chancery courts, there had been no satisfactory intermediate step between the demurrer, which dealt only with the contents of pleadings, and a full-scale trial of a case upon the merits. The summary judgment procedure was designed to provide a quick, inexpensive means of concluding cases, in whole or in part, upon

---

3. See Annot. 38 A.L.R.2d 682, 713 (1954) for discussion of cases from other jurisdictions as to the effect of an insurance covenant upon the duty to repair or rebuild.

issues as to which there is no dispute regarding the material facts. Where there does exist a dispute as to facts which are deemed material by the trial court, however, or where there is uncertainty as to whether there may be such a dispute, the duty of the trial court is clear. He is to overrule any motion for summary judgment in such cases, because summary judgment proceedings are not in any sense to be viewed as a substitute for a trial of disputed factual issues. In the present case, the Chancellor concluded immediately that there was a dispute by these parties as to whether there was or was not a total destruction of the building, an issue which he deemed material. Instead of overruling both parties' motions for summary judgment, however, he ordered a reference upon the disputed issue, and only after a lengthy reference had been completed, and exceptions thereto had been overruled, did he then purport to sustain the motion for summary judgment filed by the respondents. This is, to say the least, a very irregular use of Rule 56 proceedings. Unless the Rule is utilized only where clearly applicable and plainly within its designed purpose, its use may have the effect of preventing full and clear development of issues which could be accomplished by normal trial proceedings.[4]

The judgments of the courts below are reversed, and this cause is remanded to the Chancery Court for determination of the consequences of the breach of covenant by the respondents and entry of an appropriate judgment. In fashioning relief, the Chancellor may, of course, consider any proof already on file together with such additional evidence as he deems appropriate. All costs in the cause to date are taxed against the respondents.

FONES, C. J., and COOPER, BROCK and HENRY, JJ., concur.

4. It is not clear whether this occurred in the present case or not. After the reference and filing of the Chancellor's initial opinion sustaining the motion of respondents, both parties attempted to file further affidavits showing their negotiations and discussions prior to signing the lease. Whether these would have been admissible or probative on trial, we need not here attempt to decide. Certainly they were ineffectual after a summary judgment had already been decreed.